## MULLEN v. SHORT.

No. 4132.    Opinion Filed June 10, 1913.

(133 Pac. 230.)

1.    INDIANS—Descent and Distribution—Courts—Approval of Sale.
The county court of the county of which a deceased allottee of the Five Civilized Tribes was a resident at the time of his death is authorized, by section 9 of the act of Congress of May 27, 1908 (35 St. at L. 315, c. 199), to approve conveyances of any interest of any fullblood Indian heir to or in lands inherited from such deceased allottee, whether a regular proceeding for

the settlement of the estate of such decedent has been instituted or not.

2.    SAME—Evidence—Illegitimacy. The census card i sued by the Dawes Commission showed L. T., a member of the Five Civilized Tribes, to be the father of S. T., a deceased allottee.    Held, that evidence tending to establish that S. T. was an illegitimate child, introduced for the purpose of changing the line of descent from the putative father to the mother, was competent.

(Syllabus by the Court.)

*Error from District Court, Grady County; Frank M. Bailey, Judge.*

Action by E. F. Short against J. S. Mullen. Judgment for plaintiff, and defendant brings error. Affirmed.

*H. A. Ledbetter,* for plaintiff in error.
*Adolphus Clark* and *F. E. Riddle,* for defendant in error.
*S. T. Bledsoe, amicus curiae.*

KANE J. This was a statutory action for the recovery of a tract of land, situated in the Chickasaw Nation, commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below. Upon trial to the court the issues were determined in favor of the plaintiff, and judgment entered accordingly, to reverse which this proceeding in error was commenced.

The petition of the plaintiff is in statutory form. The answer of the defendant is, first, a general denial, and, second, that the land in controversy was allotted to Sophia Tushka, who subsequent to the allotment thereof died, leaving succeeding her her father, Levi Tushka, and her brothers, Sylvester Tonihka and Silas Tushka; that he purchased the land from Levi Tushka, and also procured a conveyance from Sylvester Tonihka and Silas Tushka, the next of kin on the paternal side, and therefore, if the court found the land to be an estate of inheritance, he was entitled thereto, by reason of the deed from Levi Tushka, the father of Sophia Tushka, and in the event the land was found to be a new acquisition, title passed

to him by reason of the conveyances from Sylvester Tonihka and Silas Tushka. He further alleged that the census card issued by the Dawes Commission shows that Sophia Tushka was the child of Esian Nowahima and Levi Tushka, and that this constituted a conclusive adjudication as to the fact as to who was the father and mother of Sophia Tushka. The reply of the plaintiff was a denial of the legal effect of the census card issued by the Dawes Commission, and allegations to the effect that Sophia Tushka, the allottee, was the illegitimate child of Esian Nowahima, the mother of Sophia Tushka, and that the land passed to the plaintiff by conveyance from Esian Nowahima, who inherited it upon the death of her illegitimate daughter, Sophia Tushka. Assignments of error relied upon by counsel for plaintiff in error, as stated in his brief, are:

"(1) That before the county court of McCurtain county had jurisdiction to approve the conveyances made to defendant in error under the Act of Congress of May 27, 1908, section 9, there must have been an administration of the estate. * * * (2) That as the census card issued by the Dawes Commission shows Levi Tuska to be the father of Sophia Tushka, it ought to be considered final upon that point."

The first question raised involves the construction of section 9 of the Act of Congress of May 27, 1908, which provides:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of such deceased allottee."

Counsel contends that under the above section the court authorized to approve conveyances of inherited lands by full-blood Indian heirs is the court which has acquired jurisdiction over the settlement of the estate of the deceased allottee, in a proceeding commenced for that purpose in the county of which the decedent was a resident at the time of his death,

in accordance with section 5142, Comp. Laws 1909 (sec. 6193, Rev. Laws 1910) which provides:

"Wills must be proved, and letters testamentary or of administration granted: (1) In the county of which the decedent was a resident at the time of his death, in whatever place he may have died."

It seems to be admitted that Sophia Tushka, the allottee herein, was a resident of McCurtain county at the time of her death, and that the county court of that county approved the deed executed by Esian Nowahima, and it is reasonably apparent from the record that at the time of the approval no administration proceedings for the settlement of the estate of the decedent were pending, and that the matter of the approval of the deed was a separate and independent proceeding.

It is our opinion that the actual pendency of an administration proceeding is not necessary to confer power upon the county courts of the state to approve conveyances executed by full-blood heirs of Indian allottees to their inherited lands, where it is made to appear to the court that the ancestor from whom the land was inherited resided in the county wherein the application for approval is·made at the time of his death. At the time section 9, *supra,* became effective, there were various constitutional and statutory provisions relating to the administration of estates of deceased persons, and providing courts with jurisdiction over such matters.

Section 12, art. 7, Williams' Ann. Const. Okla., provides that:

"The county court, coextensive with the county, shall have original jurisdiction in all probate matters. * * *"

And section 13 of the same article provides that:

"The county court shall have the general jurisdiction of a probate court. It shall probate wills, appoint guardians of minors, idiots, lunatics, persons *non compos mentis,* and common drunkards; grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons *non compos*

*mentis,* and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof. * * *"

Section 5136, Comp. Laws 1909 (Rev. Laws 1910, sec. 6189), which was extended to and put in force in the new state by the terms of the schedule of the Constitution, provides:

"The county court has jurisdiction, and the judge thereof power, which must be exercised in the cases, and in the manner prescribed by statute."

One of the matters over which it is declared by statute the county court "has jurisdiction" is to grant letters testamentary, of administration, and of guardianship. The ordinary meaning of the general language used in the foregoing constitutional provisions and legislative enactments is that the county courts of the state have jurisdiction over the administration of the estates of all persons residing therein. It means, broadly, that the county courts of the state are the courts having jurisdiction over the settlement of the estates of decedents. Congress undoubtedly, in passing section 9 of the Act of May 27, 1908, had in mind the meaning that is ordinarily given to the general language of our statute which confers probate jurisdiction upon the county courts, and used the words, "having jurisdiction of the settlement of estates of said deceased allottees," in the same broad sense. Congress was not creating a court which should have jurisdiction over such estates. Such a court had been created by the Constitution and laws of the state. What Congress intended was to cast the duty of approving the conveyances of full-blood Indians to their inherited lands upon the courts which already had "jurisdiction over the settlement of the estates of deceased allottees," when administration was necessary. Approving the conveyances of full-blood Indian heirs is in no sense akin to the administration or settlement of the estates of deceased persons, and there is no apparent reason why one should depend on the other. The purpose of Congress was to provide an economical and efficient protection for full-blood

Indian heirs against improvident conveyances of their in-
herited lands. We are unable to see how an administration
of the estate of the deceased ancestor from whom such lands
were inherited, where no such proceeding would be necessary,
except for the purpose of conferring jurisdiction on the court
to approve conveyances, would lend any aid toward either
economy or protection. In the great majority of cases in
volving the inherited lands of full-blood Indians there is no
occasion for the administration of the estate of the ancestor
in the ordinary sense. As a rule, few of the Indians leave
debts, and fewer leave property, especially real estate, subject
to the payment of debts. It is true that, in order to pro-
tect the interest of the Indian heir as well as that of the
purchaser, the court approving the conveyance ought to have
considerable information concerning the land it would. naturally
acquire, if legal administration of the estate of the decedent
had been had; but this class of information can be acquired
with as much certainty, and more expeditiously and cheaply,
in an independent proceeding instituted solely for the ap-
proval of such conveyances. So, to say that Congress in-
tended that the heir of such an Indian should be required
to incur the expense of an administration proceeding for no
other purpose than to confer jurisdiction upon the county
court to approve conveyance of his inherited lands is to say
that Congress required him to do an expensive, unnecessary
and ineffective act.

The second contention of counsel for plaintiff in error
cannot be sustained. As stated before, the census card showed
that Levi Tushka was enrolled as the father of Sophia Tushka,
the deceased allottee, and Esian Nowahima as her mother. We
know of no statute or rule of evidence which would preclude
evidence tending to show that Sophia Tushka was the il-
legitimate child of those parties. The undisputed evidence
shows that at the date of the birth of Sophia Tushka, Levi
Tushka was living in lawful wedlock with a woman other
than Esian Nowahima, by whom he had the hereinbefore

mentioned Sylvester Tonihka and Silas Tushka, and that at the time of the death of said Sophia Tushka he was still living with the same wife.

In *Yarbrough v. Spaulding et al.*, 31 Okla. 806, 123 Pac. 843, and *Campbell v. McSpadden et al.*, 34 Okla. 377, 127 Pac. 854, this court has held that the act of Congress declaring that the enrollment records of the Commission to the Five Civilized Tribes shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman is not unconstitutional and void, but the valid exercise of the authority vested in Congress. Counsel for plaintiff in error cites the foregoing authorities as supporting his contentions, but we do not believe they are in point. We believe that the findings of the Dawes Commission in matters pertaining to the ascertainment of what persons are entitled to participate in the joint tribal property, to the end that suitable government regulations and restrictions might be thrown around them to protect them against a waste of their property by inconsiderate and ignorant alienation, should be given great weight, and that where by act of Congress such findings are made conclusive evidence of the facts found, such act should be upheld. But in the instant case, primarily, the question is which of two Indians of the same quantum of Indian blood shall inherit a certain tract of land which had been duly allotted. If illegitimacy is established, as the court below found it to be, the allotment of Sophia Tushka, instead of going to her putative father, will go to her mother, Esian Nowahima. As we are of the opinion that the evidence tending to establish illegitimacy was competent, it follows that a conveyance by her, when duly approved by the proper county court, must be held valid.

As the contentions presented by counsel for plaintiff in error in his brief are found to be untenable, the judgment of the court below must be affirmed.

All the Justices concur.