## UNITED STATES *v.* BARTLETT.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 251.   Argued October 22, 1914.—Decided November 16, 1914.

The act of May 27, 1908, c. 199, 35 Stat. 312, extending to April 26, 1931, the period of restriction upon the alienation of certain Indian allotments, contained an excepting clause declaring that "nothing herein shall be construed as imposing restrictions removed by or under any prior law;" *held* that restrictions which had been terminated by lapse of time as contemplated by the law imposing them were "removed from the land by or under" a prior law within the meaning of the excepting clause.

203 Fed. Rep. 410, affirmed.

THE facts, which involve the construction of the act of May 27, 1908, extending restrictions on alienation of Indian allotments, are stated in the opinion.

*Mr. Assistant Attorney General Knaebel,* with whom *Mr. S. W. Williams* was on the brief, for the United States:

By the act of May 27, 1908, Congress meant to provide against the alienation, prior to April 26, 1931, of any allotment then held by any member of any of the Five Civilized Tribes of full or three-quarters Indian blood,

excepting only such allotments as had been or as might thereafter be specifically relieved of restrictions, by the action of the Secretary of the Interior or of Congress itself.

The act of May 27, 1908, should be construed, *in pari materia* with other acts which will be cited, as the expression of a definite policy to abolish the divergencies and remedy the defects of the various agreements under which the allotments in the Five Civilized Tribes had been made, by classifying all the allotments, irrespective of tribe, according to the degree of the presumed natural competency of the allottees, standardized arbitrarily in accordance with their respective proportions of Indian blood; and by relieving the restraints altogether as to those thus classified as competent, and by forbidding conveyances by those thus classified as incompetent prior to April 26, 1931.

Both the spirit and the letter of the act of May 27, 1908, demand that all the lands of the three-quarter blood Indians be held restricted until April 26, 1931, irrespective of the prior restrictions.

That part of the first section of the act of May 27, 1908, which declares that the act shall not be construed "to impose restrictions removed from land by or under any law prior to the passage of this act," refers only to those cases in which restrictions have been removed by the direct action of Congress or by the Secretary of the Interior from particular allotments.

The opposite construction would render this clause repugnant to the plain terms classifying three-quarter bloods as incompetent in respect of all of their land and to the fundamental purpose of the statute to protect the incompetent Indians.

The clause may readily be construed in avoidance of this result and in harmony with the statute as a whole by confining it to the special cases above mentioned.

If doubt exists, this construction should be adopted as the more beneficial to the Indians.

Congress had power to place a new restriction upon the land in controversy, as was done by the act of May 27, 1908. *Tiger* v. *Western Investment Co.*, 221 U. S. 301.

The imposition of restrictions upon the alienation of Indian allotments is but a mode of exercising the power of guardianship still residing in the United States respecting the Indians. Until the guardianship shall have been renounced, Congress may modify its plans and correct its mistakes. If it has given the Indians a liberty too large for their own good, Congress may curtail it. The renewal of an expired restriction stands upon the same ground as the extension of one which has still some time to run. The power to extend existing restrictions and the power to impose new restrictions where none exist—one and the same in quality and purpose—are derived from the guardianship of the Federal Government over the Indians.

The power to reimpose restrictions is entirely consistent with the possession by the individual Indian of rights which are constitutionally protected from interference by Congress. He may not be arbitrarily deprived of any vested right of property. But the protection of his property is a legitimate and necessary exercise of the power of guardianship, subject to which his property is held, and the imposition of a restraint upon his liberty of disposition is a necessary and legitimate means of protecting his property.

The power to protect the property of an Indian ward, being a power of the General Government, is not to be diminished or impaired in its full usefulness by the circumstance that the property has been tentatively subjected to the taxing power of a State, but the right of the State of Oklahoma to continue taxing the land in controversy is not involved, and could not constitute a defense in the present case.

The power to reimpose restrictions is consistent with

the full protection of all rights in the land which may have become vested in third persons while the allottee was free to convey.

In support of these contentions, see *Bartlett* v. *United States,* 203 Fed. Rep. 410; *Bowling* v. *United States,* 233 U. S. 528; *Choate* v. *Trapp,* 224 U. S. 665; *Deming Invest. Co.* v. *United States,* 224 U. S. 473; *Franklin* v. *Lynch,* 233 U. S. 269; *Goat* v. *United States,* 224 U. S. 458; *Hallowell* v. *United States,* 221 U. S. 317; *Heckman* v. *United States,* 224 U. S. 413; *Matter of Heff,* 197 U. S. 488; *Jones* v. *Meehan,* 175 U. S. 1; *In re Lands of Five Civilized Tribes,* 199 Fed. Rep. 811; *Mullen* v. *United States,* 224 U. S. 448; *Perrin* v. *United States,* 232 U. S. 478; *Starr* v. *Long Jim,* 227 U. S. 613; *Tiger* v. *Western Invest. Co.,* 221 U. S. 301; *United States* v. *Allen,* 179 Fed. Rep. 13; *United States* v. *Celestine,* 215 U. S. 290; *United States* v. *Kagama,* 118 U. S. 375; *United States* v. *Pelican,* 232 U. S. 442; *United States* v. *Sandoval,* 231 U. S. 28; *United States* v. *Shock,* 187 Fed. Rep. 870; *Ex parte Webb,* 225 U. S. 663; see also Act of February 28, 1887, 24 Stat. 388; Act of July 1, 1898, 30 Stat. 567; Act of March 1, 1901, 31 Stat. 861; Act of June 30, 1902, 32 Stat. 500; Act of July 1, 1902, 32 Stat. 641; Act of July 1, 1902, 32 Stat. 716; Act of March 3, 1903, 32 Stat. 1008; Act of April 21, 1904, 33 Stat. 189; Act of April 26, 1906, 34 Stat. 137; Act of May 8, 1906, 34 Stat. 182; Act of June 21, 1906, 34 Stat. 345; Act of May 27, 1908, 35 Stat. 312; Congressional Record, 60th Cong., 1st sess., vol. 42, pt. 7, p. 6781; Report of Secretary of the Interior, 1904, pt. 2, pp. 37 to 41.

*Mr. George S. Ramsey,* with whom *Mr. Edgar A. de Meules* was on the brief, for appellees:

The act of May 27, 1908, disclaimed intention to again restrict sale of any land from which restrictions had been removed.

As the constitutionality of the act of May 27, 1908, is in grave doubt, it should be construed so as to avoid constitutional question.

The title of the act is to remove restrictions, and in case of doubt as to construction the title of an act can be considered.

If the act is intended to declare all three-quarter bloods incompetent and to restrict the sale of any land then free, there was no reason for its operation to be suspended for sixty days.

The clause pertaining to restrictions on mixed-bloods of three-quarter or more Indian blood had a wide field for operation, excluding the Creek Nation.

The restrictions on Moses Wiley and all mixed-blood Creeks, irrespective of fractional quantum of Indian blood, were removed under a law, to-wit: § 16 of act of Congress approving Supplemental Creek Agreement.

If the construction of the act is in doubt—then the construction insisted on by the Government should be rejected, because it is unjust and infringes upon the State's right to tax the lands after the act, though they were subject to state taxation before.

If the act put restrictions on land then free it is unconstitutional. The Government abandoned its guardianship over unrestricted lands.

Personally, the Indians were granted statehood by the Oklahoma Enabling Act, and with respect to their persons and unrestricted lands and all other property are on an equality, civilly and politically, with all other citizens of the State, and have as citizens of the United States and Oklahoma the same exemptions from Federal control, enjoyed by citizens of any other State.

When Congress once permitted lands to become free from restrictions, the Indian being a full fledged citizen of the State, the guardianship over all the unrestricted property of that Indian ceased, whether that property

was acquired by gift, purchase, inheritance, or allotment—when once free, always free.

Congress having permitted the State's power to tax to vest, is conclusive evidence that Congress abandoned its guardianship over that land, and there is no power in the Federal Government to withdraw it from full dominion of the State.    In support of these contentions, see act of May 27, 1908, 35 Stat. 312; Supplemental Creek Treaty, 32 Stat. 500; Cherokee Agreement, 32 Stat. 716; Supplemental Choctaw and Chickasaw Treaty, 32 Stat. 641. And see also *Allen* v. *Oliver,* 31 Oklahoma, 356; *Allgeyer* v. *State,* 165 U. S. 580; *Bahuand* v. *Biz,* 105 Fed. Rep. 485; *Barrett* v. *Kelley,* 31 Texas, 476; Black, Interp. of Law, p. 205; *Blanck* v. *Pausch,* 113 Illinois, 60; *Blue Jacket* v. *Commonwealth,* 5 Wall. 737; *Bowles* v. *Haberman,* 95 N. Y. 246; *Boyd* v. *Nebraska,* 143 U. S. 135; *In re Celestine,* 215 U. S. 278; *Civil Rights Cases,* 109 U. S. 22; *Choate* v. *Trapp,* 224 U. S. 665; *Collins* v. *Hadley,* 78 N. E. Rep. 353; *Cryer* v. *Andrews,* 11 Texas, 170; *Dick* v. *United States,* 208 U. S. 353; *Elks* v. *Wilkins,* 112 U. S. 101; Endlich, Stat. Interp., §§ 53 and 370; *Fellows* v. *Denniston,* 5 Wall. 761; *Gritts* v. *Fisher,* 224 U. S. 640; *In re Heff,* 197 U. S. 505; *Lochner* v. *New York,* 198 U. S. 45; *Lone Wolf* v. *Hitchcock,* 187 U. S. 565; *Minneapolis* v. *Beum,* 56 Fed. Rep. 576; *Mullen* v. *United States,* 224 U. S. 448; *O'Conner* v. *State,* 71 S. W. Rep. 409; *Osterman* v. *Baldwin,* 6 Wall. 116; *Pennock* v. *County Com.,* 103 U. S. 44; *People* v. *Barrett,* 67 N. E. Rep. 742; *People* v. *Washington,* 36 California, 658; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Redbird* v. *United States,* 203 U. S. 76; *Risley* v. *Village,* 64 Fed. Rep. 457; *Sheehan* v. *L. & R. Ry. Co.,* 101 S. W. Rep. 380; *Slaughter-House Cases,* 16 Wall. 73; *Smythe* v. *Fish,* 23 Wall. 374; *Stoddard* v. *Chambers,* 2 How. 284; 2 Sutherland Stat. Const., § 358; *Thomas* v. *Gay,* 169 U. S. 271; *Tiger* v. *Western Invest. Co.,* 221 U. S. 286; *Truskett* v. *Closser,* 198 Fed. Rep. 835; *United States* v.

*Fisher,* 2 Cranch, 358; *United States* v. *Hall,* 171 Fed. Rep. 214; *United States* v. *Hallowell,* 221 U. S. 320; *United States* v. *Harris,* 106 U. S. 629; *United States* v. *Palmer,* 3 Wheat. 610; *United States* v. *Rickert,* 188 U. S. 433; *United States* v. *Sandoval,* 231 U. S. 28; *United States* v. *Shock,* 187 Fed. Rep. 871; *United States* v. *Sutton,* 215 U. S. 291; *United States* v. *Bennett,* 232 U. S. 303; *Yellow Beaver* v. *Board of Com.,* 5 Wall. 757.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to cancel two deeds of land allotted to an enrolled citizen of the Creek tribe of Indians. The land is what is known as surplus, as distinguished from homestead, land, and the allottee is of three-fourths Indian blood. The allotment was made under the act of June 30, 1902, 32 Stat. 500, c. 1323, known as the Supplemental Creek Agreement, which provided in § 16 that the land should be inalienable by the allottee or his heirs for a period of five years, expiring as it is said in the briefs, August 8, 1907. In 1912 the allottee deeded the land to Bartlett, one of the appellees, and shortly thereafter Bartlett deeded it to Lashley, the other appellee. These are the deeds sought to be cancelled and the right to that relief is rested upon a provision in § 1 of the act of May 27, 1908, 35 Stat. 312, c. 199, declaring that "all allotted lands of . . '. enrolled mixed-bloods of three-quarters or more Indian blood . . . shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one," etc. As the original restriction upon alienation expired several months before the passage of the act of 1908, and also long before the deed from the allottee to Bartlett, the important question in the case is whether Congress intended by the act of 1908 to re-

impose and extend that restriction in respect of allotments which theretofore had been entirely freed from it through the expiration of the period prescribed for its existence. The District Court, adhering to an opinion given in another case (187 Fed. Rep. 870, 873), answered the question in the affirmative, and the Circuit Court of Appeals, concluding that the answer should be the other way, directed that the bill be dismissed. 203 Fed. Rep. 410.

If taken literally, the language which we have quoted from the act of 1908 is doubtless broad enough to embrace all allotments of the class described whether then subject to the original restriction or theretofore freed from it. But that language is not to be taken literally, for it is followed by a declaration that "nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act." That this declaration is intended to qualify or restrain what precedes it is conceded, but to what extent is the subject of opposing contentions.

Under prior legislation the lands of the Five Civilized Tribes, including those of the Creeks, had been allotted in severalty, all subject to restrictions upon alienation which were to be terminated by the lapse of varying periods of time. As to some of the lands these periods had expired, thereby lifting the restrictions. In some instances Congress had abrogated the restrictions in advance of the time fixed for their termination, and in still other instances they had been cancelled by the Secretary of the Interior in the exercise of authority conferred by law. But as to most of the lands the restrictions were still in force. It was in this situation that Congress, by the act of 1908, extended or enlarged the period of restriction in respect of "all allotted lands of . . . enrolled mixed-bloods of three-quarters or more Indian blood" and accompanied its action with an explanation that it was not intended to

impose restrictions theretofore "removed from any land by or under any law."

The real controversy is over the meaning of the word "removed." It is not questioned that it embraces the action of Congress and of the Secretary of the Interior in abrogating or cancelling restrictions in advance of the time fixed for their expiration, but it is insisted that it does not embrace their termination by the lapse of time. In short, the contention is that the word is used in a sense which comprehends only an affirmative act, such as a rescission or revocation while the statutory period was still running. Although having support in some definitions of the word, the contention is, in our opinion, untenable, for other parts of the same act, as also other acts dealing with the same subject, show that the word is employed in this legislation in a broad sense plainly including a termination of the restrictions through the expiration of the prescribed period. This is illustrated in §§ 4 and 5 of the act of 1908 and § 19 of the act of April 26, 1906, c. 1876, 34 Stat. 137, 144, and is recognized in *Choate* v. *Trapp,* 224 U. S. 665, 673, where, in dealing with some of these allotments, it was said that "restrictions on alienation were removed by lapse of time."

*Decree affirmed.*

MR. JUSTICE MCREYNOLDS took no part in the consideration and decision of this case.