SAMPSON *et al.* v. STAPLETON.

No. 5379.   Opinion Filed February 15, 1916.

(155 Pac. 213.)

1.   **INDIANS—Choctaw Indian—Allotment—What Law Governs.** A full-blood Mississippi Choctaw Indian, duly enrolled as such, is a member of the Choctaw Tribe of Indians, and the land allotted to her, as such, is governed by the terms and provisions of the Choctaw-Chickasaw Supplemental Agreement (Act Cong. July 1, 1902, c. 1362, 32 Stat. 641) and all subsequent legislation of Congress with reference to the Choctaw Tribe of Indians, except where otherwise expressly provided.

2.   **SAME—Land of Deceased Allottee—Alienation—Validity.** Conveyances of inherited lands made in 1910 and 1911 by the full-blood heirs of a Mississippi Choctaw Indian who died in 1903, are void unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, under section 9 of the Act of Congress of May 27, 1908 (35 Stat. 315, c. 199).

(Syllabus by Dudley, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Action by John Sampson and others against Porter Staples. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

*W. A. Baker, L. S. Dolman,* and *W. H. Woods,* for plaintiffs in error.

*I. R. Mason, J. B. Moore,* and *J. A. Bass,* for defendant in error.

Opinion by DUDLEY, C. On August 9, 1911, the plaintiffs in error, Oscar Sampson, Spence Sampson, Artis Sampson, and Cenie Sampson, by their guardian F. B. Henshaw, and John Sampson, Emaline Parker, and Steve Sampson, commenced this action in the district court of Carter county against the defendant in error, Porter Staples, defendant, to quiet title to and recover possession of 317 acres of land, constituting the homestead and surplus allotments of Louisiana Sampson, deceased. The issues were joined, and the case tried to the court without a jury, resulting in a judgment in favor of the defendant in error. From this judgment, the plaintiffs in error have appealed. The parties are the same here as they were in the trial court, and we shall therefore refer to them accordingly.

There is no controversy as to the facts. Louisiana Sampson was a full-blood Mississippi Choctaw Indian, duly enrolled as such. She died, intestate, on August 13, 1903, leaving surviving her, as her sole and only heirs at law, Oscar Sampson, Spence Sampson, Artis Sampson, Cenie Sampson, and Arlome Sampson, minors, and Emaline Par· ker and Steve Sampson. Subsequent to the death of the said allottee, and during the year 1907, the said Arlome Sampson died, intestate, without issue, leaving surviving him, as his sole and only heir at law, his father, John Sampson, one of the plaintiffs. The plaintiffs are all full-blood Mississippi Choctaw Indians, duly enrolled as such. After the death of said allottee, and prior to the passage of the act of Congress approved April 26, 1906 (34 Stat. 137, c. 1876), allotment designations were made for said allottee, covering the land in controversy. On October 22,

1907, allotment certificates were duly issued to said allottee for said lands, and thereafter, and in May, 1909, patents were duly issued to said allottee for said lands, and recorded, as required by law. In August, 1910, the plaintiffs, John Sampson, Steve Sampson, and Emaline Parker, conveyed, by general warranty deed, to the defendant a portion of the allotment of said deceased allottee, which deed was duly recorded. Following this, and on March 11, 1911, they conveyed, by general warranty deed, to the defendant the remainder of the allotment of said deceased, and this deed was duly recorded. These deeds were not approved, either by the Secretary of the Interior under the act of April 26, 1906, or by the county court under the act of May 27, 1908 (35 Stat. 312, c. 199). The defendant claims title to an undivided one-half interest in the land in controversy by virtue of these two deeds. The minor plaintiffs claim an undivided interest in said lands as heirs of the deceased allottee, and the plaintiffs insist that the deeds, under which the defendant claims title and is in possession, are void and of no force and effect, because not approved by the county court under the act of May 27, 1908. If approval is necessary, the defendant has no title; otherwise, he owns an undivided one-half interest. The trial court concluded that approval was not necessary, and if its conclusion is correct, the judgment should be affirmed; otherwise, reversed.

Under article 14 of the treaty between the United States and the Choctaw Nation, concluded September 27, 1830, provision is made for the Choctaw Indians to remain in the states and become citizens thereof, provided they desire to do so; after which it is provided:

"Persons who claim under this article shall not lose the privilege of a Choctaw citizen, but if they ever remove

are not to be entitled to any portion of the Choctaw annuity." (Act of Congress Sept. 27, 1830, 7 Stat. 333.)

Under section 21 of the act of Congress approved June 28, 1898 (30 Stat. 497, c. 517), known as the Curtis Act, dealing with the Mississippi Choctaws, it is provided:

"Said commission shall have authority to determine the identity of Choctaw Indians claiming rights in the Choctaw lands under article 14 of the treaty between the United States and the Choctaw Nation concluded Sept. 27, 1830, and to that end  *  *  *  may administer oaths, examine witnesses, and perform all other acts necessary thereto and make report to the Secretary of the Interior."

"No person shall be enrolled who has not heretofore removed to and in good faith settled in the nation in which he claims citizenship: Provided, however, that nothing contained in this act shall be so construed as to militate against any rights or privileges which the Mississippi Choctaws may have under the laws of or the treaties with the United States."

The next legislation concerning the Mississippi Choctaws is found in section 1 of the Indian Appropriation Act of May 31, 1900 (31 Stat. 236, c. 598), which is as follows:

"Provided, that any Mississippi Choctaw duly identified as such by the United States Commission to the Five Civilized Tribes shall have the right, at any time prior to the approval of the final rolls of the Choctaws and Chickasaws by the Secretary of the Interior, to make settlement within the Choctaw-Chickasaw country, and on proof of the fact of *bona fide* settlement may be enrolled by the said United States Commission and by the Secretary of the Interior as Choctaws entitled to allotment: Provided further, that all contracts or agreements looking to the sale or incumbrance in any way of the lands to be allotted to said Mississippi Choctaws, shall be null and void."

Following this the Choctaw-Chickasaw Supplemental Agreement was ratified by the act of Congress approved July 1, 1902 (32 Stat. 641, c. 1362). Sections 41 to 44, inclusive, of this agreement make provisions for *bona fide* settlement of duly identified Mississippi Choctaws within the Choctaw-Chickasaw country, for their enrollment as such, allotment of lands to them, and the issuing of patents therefor. In section 41 it is provided:

"All persons duly identified by the commission to the Five Civilized Tribes under the provisions of section 21 of the act of Congress approved June 28, 1898 (30 Stat. 495), as Mississippi Choctaws entitled to benefits under article 14 of the treaty between the United States and the Choctaw Nation concluded September 27, 1830, may, at any time within six months after the date of their identification as Mississippi Choctaws by the said commission, make a *bona fide* settlement within the Choctaw-Chickasaw country, and upon proof of such settlement to such commission within one year after the date of their said identification as Mississippi Choctaws shall be enrolled by such commission as Mississippi Choctaws entitled to allotment as herein provided for citizens of the tribes, subject to the special provisions herein provided as to Mississippi Choctaws, and said enrollment shall be final when approved by the Secretary of the Interior.   *   *   *"

In section 42 it is provided:

"When any such Mississippi Choctaw shall have in good faith continuously resided upon the lands of the Choctaw and Chickasaw Nations for a period of three years, including his residence thereon before and after such enrollment, he shall, upon due proof of such continuous, *bona fide* residence, made in such manner and before such officer as may be designated by the Secretary of the Interior, receive a patent for his allotment, as provided in the Atoka agreement, and he shall hold the lands allotted

to him as provided in this agreement for citizens of the Choctaw and Chickasaw Nations."

Prior to the ratification of this agreement, the Mississippi Choctaws were not permitted to participate in the allotment of the tribal lands of the Choctaw and Chickasaw Nations. Bledsoe, Indian Laws (2d Ed.) p. 27, sec. 21; *Ikard v. Minter*, 4 Ind. Ter. 214, 69 S. W. 852.

We therefore conclude that under this agreement the deceased allottee was a member of the Choctaw Tribe of Indians at the time of her death, and that the lands were allotted in her name under this agreement, and that the same are subject to the terms and provisions thereof and all subsequent legislation of Congress with reference to the Choctaw Tribe of Indians. The deceased allottee was living at the time this agreement was ratified. She died, however, before receiving her allotment, and the land was allotted to her in her name, and descends to her heirs under section 22 of this agreement, which provides:

"If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement and before receiving his allotment of land, the lands to which such person would have been entitled if living shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter forty-nine of Mansfield's Digest of the Statutes of Arkansas. * * *"

The certificates of allotment and the patents provide that they are made under the act of Congress approved July 1, 1902 (being the act ratifying this agreement), and it therefore seems clear that the land in controversy was allotted under this agreement.

Under the view we take of this case, it is not necessary for us to determine the very interesting question presented by counsel as to whether the title to this allotment passed when the allotment designations were made, prior to April 26, 1906, or when the certificates of allotment were issued in 1907. We would reach the same conclusion in either event.

The deceased allottee died in 1903. The deeds in controversy were made in 1910-11. Assuming, without deciding, that the title to the deceased allottee's allotment passed to her heirs prior to the act of Congress of April 26, 1906, yet the conveyances were not made until long after the passage of that act. Section 22 of this act in part provides:

"All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

So, if the heirs of the deceased allottee had a right to convey their interest in the allotment prior to the passage of this act, after its passage they could not do so without the approval of the Secretary of the Interior. *Marchie Tiger v. Western Investment Co. et al.*, 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738. *United States v. Western Investment Co. et al.*, 226 Fed. 726; *Brader v. James (nee Reeves)*, 49 Okla. 734, 154 Pac. 560.

These deeds were not made until after the passage of the act of Congress of May 27, 1908, and therefore were subject to the approval of the county court having jurisdiction of the settlement of the estate of said deceased allottee, under section 9 of this act, which is as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the

alienation of said allottee's land: Provided, that no conveyance of any interest in any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee" (35 Stat. 312)

—and, not having been so approved, are void. *Tiger v. Western Investment Co., supra; Harris v. Gale* (C. C.) 788 Fed. 712; *MaHarry v. Eatman,* 29 Okla. 46, 116 Pac. 935; *Brader v. James, supra; United States v. Knight et al.,* 206 Fed. 145, 124 C. C. A. 211; *Mullen v. Short,* 38 Okla. 333, 133 Pac. 230. The law in force at the time the deeds were made controls. *Ma Harry v. Eatman, supra; Harris v. Gale, supra; Brader v. James (nee Reeves), supra.*

This act does not reimpose restrictions *(United States v. Bartlett et al.,* 235 U. S. 72, 35 Sup. Ct. 14, 59 L. Ed. 137) ; but it does require the conveyance of inherited lands by full-blood Indian heirs to be approved by the county court. In other words, the county court is substituted in lieu of the Secretary of the Interior.

The judgment of the trial court should be reversed and the cause remanded.

By the Court: It is so ordered.