HOPKINS et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 6, 1916.)

No. 4606.

1. INDIANS ☞15(1)—LANDS—RESTRICTIONS ON ALIENATION.

The original Creek treaty of March 1, 1901 (31 Stat. 863, c. 676, § 4), provided that allotted lands selected for a minor should not be sold during his minority. The Supplemental Agreement of June 30, 1902 (32 Stat. 503, c. 1323, § 16), which became effective August 8, 1902, provided that allotted lands should not be incumbered or alienated before the expiration of five years, except with the approval of the Secretary of the Interior. Act May 27, 1908, c. 199, § 1, 35 Stat. 312, provided as follows: "From and after sixty days from the date of this act * * * all allotted lands of enrolled full bloods, and enrolled mixed bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, * * * or any other incumbrance prior to April 26, 1931, * * * nothing herein shall be con-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

strued to impose restrictions removed from land by or under any law prior to the passage of this act." *Held,* that the allotment of a three-quarter blood Creek Indian, who was a minor when the last-named act became effective, was subject to the restrictions therein prescribed after she attained her majority, although such minors who reached their majority before July 27, 1908, were freed from restrictions.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 37; Dec. Dig. ☞15(1).]

2. STATUTES ☞228—CONSTRUCTION—EXCEPTIONS FROM GENERAL WORDS.

All that is not clearly embraced in an exception from the general words of a statute remains within the scope of the principal provision.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 310; Dec. Dig. ☞228.]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit in equity by the United States against J. H. Hopkins and H. M. Fender. Decree for the United States, and defendants appeal. Affirmed.

Charles B. Mitchell, of Oswego, Kan. (W. W. Noffsinger and Y. P. Broome, both of Muskogee, Okl., on the brief), for appellants.

Paul Pinson, Sp. Asst. U. S. Atty., of Atoka, Okl. (D. H. Linebaugh, U. S. Atty., and Archibald Bonds, Sp. Asst. U. S. Atty., both of Muskogee, Okl., on the brief), for the United States.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. Lucy McIntosh is a three-quarter blood Creek Indian. At the time of the allotment of the tribal lands she was six years of age. On the 19th day of April, 1911, after she had attained her majority, she executed a mortgage to the defendant, Hopkins, covering a portion of her surplus lands. On the 13th day of May of the same year, she conveyed another portion of her surplus lands by warranty deed, to the defendant, Fender. This suit was brought by the United States against Hopkins and Fender to cancel these instruments as clouds upon the title. The trial court entered a decree in favor of the government, and the defendants appeal.

[1] The question presented is whether the surplus allotment of a three-quarter blood Creek Indian, who was a minor when the act of Congress of May 27, 1908, became effective, was subject to the restrictions against alienation and incumbrance prescribed by that act, after she had reached her majority. The answer to that question is found in the following statutes. The original Creek Treaty (31 Stat. at Large, page 863), provided as follows:

"Allotment for any minor may be selected by his father, mother, or guardian, in the order named, *and shall not be sold during his minority.*"

Section 16 of the Supplemental Creek Agreement, approved June 30, 1902 (32 Stat. at Large, 503), is as follows:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation

nor be alienated by the allottee or his heirs before the expiration of *five years* from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. * * *"

This supplemental agreement became effective by proclamation of the President on August 8, 1902, and the restriction which it imposes, therefore, expired by limitation on *August 8, 1907*.

Section 1 of the Act of May 27, 1908 (35 Stat. at Large, 312), uses the following language:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: * * * all allotted lands of enrolled full-bloods, and enrolled mixed bloods of three-quarters or more Indian blood, *including minors of such degrees of blood*, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance *prior to April 26, 1931.* * * * Nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act."

As we have pointed out above, the five-year restriction of the Supplemental Creek Agreement expired August 8, 1907. Allotments of minors who became of age between that date and the date when the act of May 27, 1908, took effect, namely, July 27, 1908, were freed from restrictions. It was decided by the Supreme Court in United States v. Bartlett, 235 U. S. 72, 35 Sup. Ct. 14, 59 L. Ed. 137, that the last clause of the act of May 27, 1908, above quoted, namely, "Nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act," prevented allotments of three-quarter blood Indian minors who attained their majority during the period between August 8, 1907, and July 27, 1908, from coming under the restrictions of the act of May 27, 1908. It is argued by counsel for appellants that because the allotments of some minors were thus exempted from the restrictions of the act of May 27, 1908, the court, to prevent "confusion," should construe that act as not restricting the alienation of allotments of any minors after they attain their majority. To do that we would have to disregard the plain language of the statute. It extends to all lands "allotted heretofore or hereafter." It embraces "all allotted lands of enrolled mixed bloods of three-quarter or more Indian blood, *including minors of such degrees of blood.*" When language is thus plain, courts cannot disregard it by reason of such mild considerations of inconvenience as are urged in this case. Felsenheld v. United States, 186 U. S. 126, 131, 22 Sup. Ct. 740, 46 L. Ed. 1085. Why Congress did not embrace the allotments of minors who had attained their majority in the few months between the two acts can only be surmised. It may have been on account of doubts as to whether lands which had once become entirely free could be again placed under restriction; or it may have been because Congress feared that the rights of innocent third parties might be clouded by such legislation. Whatever the reason it is now clear by the decision of the Supreme Court to which we have referred, that Congress did not intend to impose the restrictions of the act of May 27, 1908, upon allotments of minors which had thus become free from restriction.

235 F.—7

[2] We think it equally clear from the language of that act that Congress did intend to continue under restriction all allotted lands of enrolled mixed bloods of three-quarter or more Indian blood, including minors of such degrees of blood, if those allotments were at the time the act took effect subject to restrictions against alienation. The last clause which we have quoted covers only allotments from which restrictions had been removed. The allotments of Lucy McIntosh were not of that character. The language of the statute contains no exception, except allotments from which restrictions had been removed. It follows, it seems to us, as a necessary conclusion, that the allotments here involved became subject to the restrictions of the act of May 27, 1908. It is "a rule of interpretation to which all assent, that the exception of a particular thing from general words, proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause had the exception not been made." Brown v. Maryland, 12 Wheat. 419, 438 (6 L. Ed. 678). The exception also proves that what should be withdrawn from the enacting clause was present to the mind of the Legislature. It follows as a necessary presumption that all that is not clearly embraced in the exception, remains within the scope of the principal provision. Sutherland on Statutory Construction, § 328. The analogies of the opinion of the Supreme Court in Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, point clearly to the interpretation of the act of May 27, 1908, which we have adopted. A similar view has been expressed by the Supreme Court of Oklahoma in Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755, and Texas Co. v. Henry, 34 Okl. 342, 126 Pac. 224.

The judgment of the trial court is affirmed.