In the Matter of the Application of JOHN DETH, Respondent, Appellant, for a Mandamus Order against WILLIAM R. CASTIMORE, as Commissioner of Fire, City of Buffalo. New York, Appellant, Respondent, and JOSEPH B. FORD and Others, as Members of and Constituting the Municipal Civil Service Commission of the City of Buffalo, Defendants.*

Fourth Department, June 26, 1935.

* See 154 Misc. 906.

*John L. Kelly*, for the petitioner.

*Gregory U. Harmon, Corporation Counsel [John E. Livermore* of counsel], for the defendant William R. Castimore, commissioner of fire.

EDGCOMB, J. The petitioner seeks reinstatement as an upholsterer in the fire department of the city of Buffalo, from which position he was removed on April 1, 1934. He has been awarded a peremptory mandamus order restoring him to his former employment, but without pay for the time he was deprived of his office. He appeals from that part of the order which denies him his back salary, and the fire commissioner appeals from the part which directs his reinstatement.

On January 15, 1924, the petitioner was appointed a harness maker in the Buffalo fire department, at a salary of three dollars and seventy-five cents per day. The position was then in the skilled labor class. Later it was put in the non-competitive class, and the petitioner was given, and successfully passed, the non-competitive examination prescribed by the rules of the municipal civil service commission.

When, in the march of progress, horse-drawn engines, trucks and wagons gave way to motor-driven vehicles, and the services of harness makers were no longer required, petitioner's title was changed to "upholsterer," and he was assigned to the task of making and repairing the leather belts which were used by the firemen in their work. His compensation was increased from time to time, until, at the date of his discharge, he was receiving $2,250 per annum, the same amount which was paid to the firemen.

Petitioner asserts that his dismissal was illegal, for two reasons:

1. That he could only be removed upon written charges, and after trial had thereon; that, as no such charges were ever served upon him, and as he was never accorded a trial, the peremptory mandamus order requiring his reinstatement was properly granted.

2. That his removal was occasioned because of his affiliation with the political party of the opposite faith from that of the city administration, and solely for political reasons, contrary to the provisions of section 25 of the Civil Service Law.

We may dismiss the second objection without further consideration. The applicant for relief would not be entitled to a peremptory mandamus order under any such theory, because a question of fact is raised by the answering affidavits as to the cause of his removal. Furthermore, section 25 of the Civil Service Law does not apply to one holding an appointment to a position

in the non-competitive class.  (*Matter of Merriweather* v. *Roberts*, 268 N. Y. 12.)

Petitioner must succeed, if he is to succeed at all, upon his first objection to the legality of his removal.  Was he entitled to written charges and a chance to submit his defense and have the issues tried?  If so, the granting of the peremptory mandamus order was proper.  Our decision, therefore, turns upon the necessity of such procedure upon the part of the commissioner.

Section 445 of the Buffalo charter (Local Law, No. 4, 1927; Local Law, 1932, p. 107) reads as follows: " No member of the police or fire department, other than the head of either department, shall be removed, reduced in rank, suspended, fined or otherwise punished or disciplined except upon charges as provided in sections four hundred forty-six to four hundred fifty inclusive, and such sections shall apply only to members of the police and fire departments."

Section 446 requires that all charges shall be preferred in writing, and shall include all complaints against the member arising prior to the presentation of the charges.  Section 448 relates to trials, and provides that the head of the department of which the accused is a member, or a deputy designated by him, shall hear and determine the complaints, unless the accused elects to be tried before a board consisting of the mayor, comptroller and president of the common council.

If the petitioner was a member of the fire department, I think it must be conceded that he could not legally be removed, except upon written charges, and after a trial as provided by the city charter.

Defendant takes the position that the petitioner is not a member of the fire department within the meaning of the city charter; that the department consists of two distinct divisions, the uniformed and non-uniformed branches; that those who are actually engaged in fighting fires constitute the former grade, while the clerks, laborers, shop employees, and those whose duties do not require them to respond to an alarm of fire, and take an active part in the work of extinguishing a conflagration, make up the latter; that the term " member of the  *  *  *  department," as used in the city charter, refers only to the uniformed fire-fighting officers and employees, and, as the petitioner is not in that grade, he does not come within the provisions of the statute requiring written charges and a trial before he can be removed.  I cannot agree with such contention.

It is very true that the rules and regulations of the department recognize these two divisions which go to make up this branch

of city functions. Section 1 of article 1 specifies who shall constitute the "uniformed members." Section 2 of the same article prescribes that all employees not mentioned in the previous section shall constitute the non-uniformed force. But it will be noted that one branch is made a member of the department just as much as the other.

Section 445 of the charter speaks of the department in general terms; it does not confine those who are protected by its provisions to the uniformed force; it uses the word " member," and a member is an integral part of the aggregate or the whole.

It is common knowledge that the work of an efficient fire department is not confined to combating the flames. To successfully accomplish the primary purpose for which such a municipal activity is organized, clerks, mechanics and laborers are necessary, the apparatus must be kept in good repair, proper signals must be installed and kept in working order, paraphernalia of various kinds to aid in fighting the flames and in saving lives must be furnished and made available. The men who do this work are just as necessary to a well-organized and effective department as are those who actually hold the hose and direct the stream on the flames. The services of all, even though widely diversified, are for the sole purpose of safeguarding property within the municipality from loss and destruction by fire. All are under the direction of one head. While it is true that the work of the petitioner may not expose him to the dangers incident to those members who respond to the alarm of fire and who actually fight the flames, nevertheless petitioner's services are necessary and indispensable to the successful work of the department. It is the joint force and full result of all which makes a competent power to produce the desired effect.

In determining the intention of the Legislature as embodied in this statute, we must give to the language employed its plain and obvious meaning, if it is not ambiguous; the court is not permitted to arbitrarily add to or subtract from the words of the act. (*People ex rel. Brown* v. *Woodruff*, 32 N. Y. 357, 364; *Matter of Miller*, 110 id. 216, 222; *Tompkins* v. *Hunter*, 149 id. 117, 122, 123.)

In enacting this provision of the charter the Legislature undoubtedly had in mind the advisability of insuring, so far as practicable, the permanency of the fire and police departments, the two branches of government which so vitally touch the safety and well being of the public, and the security of its property. The *esprit de corps* of these organizations cannot help but be enhanced by the knowledge that tenure of office is not dependent upon the caprice of the appointing power, and that a competent

and faithful employee cannot be discharged at the petulant and fickle whim of some commissioner. The spirit of the act is to protect the various members of the department from removal, except upon conviction of misconduct after a fair trial, just so long as they are physically fit to perform the duties of their position. Such a construction should not be narrowed by any technicality, but be favored on broad principles. The statute is remedial in its nature, and as such should be liberally construed, so as to give effect to the general policy of the law-making body, and to embrace all cases coming fairly within its scope. (*Town of Ulysses* v. *Ingersoll*, 182 N. Y. 369, 372.)

The charter, after using the general and comprehensive expression, " no member of the police or fire department," makes a specified exception. If it was intended to bar from the procedure there laid down all non-uniformed or non-fire fighting members, it would have been very easy for the Legislature to have said so, when it made the one exception which it did make. As a general rule an express exclusion eliminates all others. That which is not clearly embraced within the named exception remains within the scope of the principal provision. The expression of one thing is the exclusion of another. (*Expressio unius est exclusio alterius.*) (*People ex rel. Peck* v. *Commissioners of Department of Fire & Buildings of Brooklyn*, 106 N. Y. 64, 68; *Smith* v. *Brooklyn Savings Bank*, 101 id. 58, 62; *Morton* v. *Horton*, 189 id. 398, 400; *Hopkins* v. *United States*, 235 Fed. 95, 98; Sutherland Stat. Const. § 328.)

By the provisions of chapter 397 of the Laws of 1920* four per cent of the salary of each officer and regular employee of the department is required to be paid into the firemen's relief and pension fund, and any such officer or employee, who may have become permanently incapacitated from performing full duty by reason of disease, disability or long service, is entitled to be retired upon a pension equal to one-half the annual compensation which he was receiving at the date of his retirement.

The petition alleges, and it is not denied, that several employees of the department, who were not on the fire-fighting force, but who were performing duties similar to those discharged by the petitioner, have been retired during the past years, and granted a pension by the city authorities, which could not have been done unless such persons were members of the department. This practical construction of the charter by the public authorities

---

* Amending Buffalo City Charter (Laws of 1914, chap. 217), § 277, subd. 8, § 279, subd. 2.— [REP.

interested in its enforcement is of value in determining its real meaning. (*Matter of City of New York*, 217 N. Y. 1, 12, 13; *Grimmer* v. *Tenement House Dept.*, 205 id. 549, 550; *People ex rel. Moriarty* v. *Creelman*, 206 id. 570, 574; *City of New York* v. *New York City R. Co.*, 193 id. 543, 548.)

Adopting these well-known rules of statutory construction, the conclusion is inevitable that the Legislature, when it said that written charges must be preferred against a member of the fire department of the city of Buffalo, and that he must be accorded an opportunity to defend himself before he could be removed, meant to make that requirement applicable to the occupant of the position designated as " upholsterer."

If authorities are needed to sustain the contention of the petitioner, they are not wanting.

In *People ex rel. McLaughlin* v. *Commissioners of Department of Fire & Buildings of Brooklyn* (106 N. Y. 676; opinion found in 10 N. Y. St. Repr. 666) a kerosene inspector in the Brooklyn fire department was held to be a member of the department.

In *People ex rel. Smith* v. *Wurster* (89 Hun, 7; affd., 147 N. Y. 716) the relator, a surgeon of the Brooklyn fire department, was required to attend the sick, injured and disabled members, and to attend all fires on the second and third alarms. He was held to be a member of the department, within the meaning of a statute which provided that no member could be removed without written charges, and without a hearing.

In *Van Horn* v. *Donnelly* (96 N. J. L. 345; 115 A. 337) a janitress was declared to be a member of the fire department of the city of Trenton within the meaning of the Police and Firemen Pension Act, and to be entitled to retire on half pay.

A similar ruling was made by the Court of Errors and Appeals of New Jersey in *Sheehan* v. *Lee* (96 N. J. L. 341; 115 A. 347).

In *Ahearn* v. *Davis* (184 Cal. 579; 194 P. 1008) it was held that a harness maker was a member of the San Francisco fire department under a statute which required the board of fire commissioners to reorganize the department, and in so doing to make its appointments of officers and members from the persons constituting the force in the service of the city at the time the statute went into effect. The court there said that, according to the usual and ordinary meaning of the word, an " employee " of a city department was a " member " of that department.

In *Fickett* v. *Boston Firemen's Relief Fund* (220 Mass. 319; 107 N. E. 957) the defendant was organized for the purpose of holding moneys and real estate for the benefit of the members of the fire department. The fire alarm department was originally a separate

organization, but was later united with the regular fire department. Held, that the members of the fire alarm department, although not exposed to the hazards of actual fire fighting, were entitled to membership in the relief fund.

In *Hurley* v. *Sykes* (69 Cal. App. 310; 231 P. 748) a blacksmith's helper in the yard of the fire department of the city of San Francisco, who acted as a member of relief and emergency companies, and responded for duty on wrecking crews, was held to be a member of the department, and entitled to the benefits of the firemen's relief fund.

Here the petitioner has held his position since his appointment in January, 1924. He has acquired title to said office, and he can only be removed in the manner prescribed by law. As the requirements of the charter have not been followed, his summary removal was illegal, and the granting of the peremptory mandamus order was proper, no question of fact being raised as to the failure to file written charges against him, or to afford him a trial. (*Matter of Lazenby* v. *Municipal Civil Service Comm.*, 116 App. Div. 135; affd., 188 N. Y. 588; *People ex rel. Peck* v. *Commissioners of Department of Fire & Buildings of Brooklyn*, 106 id. 64.)

Having reached the conclusion that the petitioner comes squarely within the provisions of section 445 of the Buffalo charter, it is unnecessary to discuss the question raised by him that he can only be removed for incompetency, misconduct or insubordination shown after a hearing, upon written charges, under the provisions of section 444 of the same act.

This brings us to the question raised by the petitioner's appeal relating to a recovery of his pay during the time he has been kept out of his office. This relief has been denied him under the authority of *Matter of Barmonde* v. *Kaplan* (266 N. Y. 214), where it is held that one illegally suspended from his position may not, upon being reinstated, recover pay for the period of suspension, where, during such period, the municipality has filled the position, and has paid the occupant for doing the work.

There would be no doubt of the correctness of this ruling were it not for the provisions of chapter 734 of the Laws of 1935, which became law on May 6, 1935,* with the approval of the Governor, and which took effect immediately, and which provides that any officer or employee who shall have been, or thereafter might be, removed from any position held by him by appointment or employment in the State or in any city thereof, contrary to the statute, and who shall have been restored to such position or employment

---

* Amending Civ. Service Law, § 23.— [REP.

by order of the court, shall be entitled to receive from the State or city the same compensation therefor from the date of such removal, less the amount of compensation received from any other employment or occupation during the period he was out of office, which he would have been entitled by law to receive in such position or employment but for such unlawful removal.

While, as a general rule, a statute is to be construed as having a prospective operation only, it is equally as well established that, where a contrary intention or purpose is obvious and apparent, the act will be given a retroactive application. (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240; *Hollenbach* v. *Born*, 238 id. 34, 38.)

There will be found in the statute itself a clear intention on the part of the Legislature to make the provision, which was doubtless passed to overcome the harsh rule laid down by the Court of Appeals in *Matter of Barmonde* v. *Kaplan* (266 N. Y. 214) apply to past illegal removals as well as to future ones. The injustice of depriving an employee of the emoluments of a position, to which he is legally entitled, and which have wrongfully been withheld from him by the illegal and arbitrary act of his superior, is apparent at a glance. Simple justice demands that no distinction should be made between those who had been improperly dismissed at the time the act took effect, and those who might thereafter incur the displeasure of the appointing power. So when the Legislature, referring to those to whom the remedy was given, used the words " any officer or employee *who shall have been, or may hereafter* be removed," it is obvious that the intention was to make the act apply to the past as well as to the future.

The order appealed from was granted April 27, 1935. The law as it then stood fully warranted the order. The statute above mentioned was passed after the above date. The question naturally arises if, on this appeal, we may dispose of the case in accordance with a law now in force, but which was not enacted until after the granting of the order appealed from, or whether we are bound by the law as it stood when the order was made. As the intention of the Legislature seems to be clear to make the remedy apply to all cases where an employee has been illegally removed, I think there can be no doubt that we may dispose of the case in accordance with the law as amended after the order was granted, but before the appeal is decided. We are bound by the law as it exists at the time of our decision. (*Robinson* v. *Robins Dry Dock & Repair Co.*, 238 N. Y. 271; *People ex rel. Clark* v. *Gilchrist*, 243 id. 173, 180; *People* v. *City of Syracuse*, 128 App. Div. 702.)

For the reasons above stated, I think that the Special Term was right in granting the peremptory mandamus order reinstating the

petitioner to the position from which he was removed, and that the order, to that extent, should be affirmed, but that the denial of petitioner's application for his back salary was erroneous, and that the matter should be remitted to the Special Term to determine what amount of compensation, if any, the petitioner has received from any occupation in which he was engaged from the date of his removal to the time of his restoration to his former position. The record is silent on that subject, and for that reason we are unable to determine the amount which the petitioner is entitled to receive for the time he has been illegally deprived of his office.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Same decision as in *Matter of Howard* v. *Higgins* (245 App. Div. 857).