**WRIGLEY et al. v. McCOY et al.**

No. 7940—Opinion Filed June 12, 1917.

Rehearing Denied Sept. 26, 1918.

(175 Pac. 259.)

1. **Indians — Allotment — Restriction on Alienation—Act of Congress.**

Under the Supplemental Agreement of the Choctaw and Chickasaw Nations (July 1, 1902, c. 1362, sec. 16, 32 Stat. 643), the restrictions upon the alienation of the surplus lands of a deceased allottee selected prior to the death of the allottee runs with the land and prevents the heirs from alienating the same before the expiration of the period prescribed in said section.

2. **Same—Conveyance—Validity.**

A full-blood Choctaw Indian allottee died in August, 1904, after the selection of the homestead and surplus of the allottee. In September, 1904, the heirs, being adults, executed a deed purporting to convey the sur-

plus allotment of the deceased. Held, that such deed is void and does not constitute color of title.

### 3. Indians—Federal Guardianship—Citizenship.

The guardianship of the United States over Indian lands does not abate upon the making of allotment and the allottee becoming a citizen of the United States.

### 4. Indians — Conveyance of Allotment — Statute of Limitations.

The statutes of limitation do not begin to run before the removal of restrictions in favor of one in possession of Choctaw Indian lands under deed by an Indian inheriting such lands executed prior to removal of restrictions against alienation thereof.

### 5. Same — Void Conveyance — Occupying Claimants' Rights.

One who holds Choctaw Indian lands under a deed void, because same was executed prior to removal of restrictions against sale of such lands, cannot recover as an occupying claimant for improvements made and cannot offset a claim for rents by value of such improvements.

(Syllabus by Stewart, C.)

Error from District Court, Marshall County: Jesse M. Hatchett, Judge.

Action by Elias McCoy and Lillian McCoy against Walter H. Wrigley and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

Kennamer & Coakley and Potterf & Gray, for plaintiffs in error.

Taylor & Reid, J. B. Harper, and Rider & Hurt, for defendants in error.

Opinion by STEWART, C. The parties will be referred to hereinafter as plaintiff and defendant as they were in the court below. The plaintiffs filed their petition in the district court of Marshall county alleging: That they were full blood Choctaw Indians, duly enrolled as such on the general rolls of citizens and freedmen of the Five Civilized Tribes, of the Indian Territory. That the plaintiffs were the father and mother, respectively, of Layvinia McCoy, deceased, who was a full-blood Choctaw Indian, and that the land involved was the "surplus" allotment of their deceased daughter, Layvinia McCoy, who had died in August, 1904, unmarried and without issue, leaving as her only heirs the plaintiffs. That before the death of Layvinia McCoy the homestead and surplus had been duly allotted to her. That patent, however, for same was not issued until the year of 1908. That the plaintiffs executed what purported to be a general

warranty deed to the Washita Land Company on September 23, 1904, purporting to convey said surplus allotment, and that at the time the petition was filed, the same was claimed by the defendant Walter H. Wrigley and was in his possession through his tenant. It was averred that the deed made by the plaintiffs was in violation of section 16 of the Supplemental Agreement between the United States and the Choctaw and Chickasaw Indians approved July 1, 1902. Plaintiffs prayed for possession of the land, the cancellation of instruments of record purporting to convey the same which were clouds upon the title, and for rents and profits for three years prior to the filing of their petition. The defendants each demurred to the petition generally, and also on the ground that the cause of action was barred by the statutes of limitation of Arkansas (section 4474, Mansfield's Digest). The demurrers were overruled with exceptions. The defendants answered denying generally the allegations in the petition and claiming title by reason of adverse possession since the date of the deed, September 23, 1904, and more than seven years as provided by the statutes of limitation (section 4474, Mansfield's Digest), which defendants urged to be applicable to the facts in the case. The defendant Wrigley further answered that, while in such possession, believing that he had good title to the premises, he made certain valuable and lasting improvements of the total value of $820, and asked that his title be quieted and that he be adjudged to own the land, or in the event plaintiffs recovered the land, that the value of the improvements be offset against the rental value, or that his rights by reason of the improvements be determined under the Occupying Claimants' Act.

The cause was tried to the court without a jury, and, after the plaintiffs introduced their evidence, the defendants demurred to same. Demurrer was overruled, with exceptions. Defendants then introduced evidence showing that defendant Wrigley and those under whom he held had been in continuous possession by tenants of the land since the year 1904, under claim of title originating in the deed from plaintiffs to Washita Land Company, and offered to prove in support of claim for improvements the value of improvements claimed to be made on the land during such possession, which proof was excluded by the court and exceptions allowed. The court by request made findings of fact and found the rental value of the land to be $60 per year and that the defendant Wrigley went into possession in 1911. The court otherwise found facts in accord

with and fully supporting the allegations in plaintiff's petition, which findings are sustained by the uncontradicted evidence. Judgmett was rendered in favor of the plaintiffs for the possession of the land, removal of cloud from title, and for sum of $180 as rents for the three years preceding the filing of the petition.

After judgment, the defendant Wrigley made request for reimbursement for improvements, and for taxes paid; that procedure be had under the Occupying Claimants' Act (Rev. Laws 1910, sec. 4933 et seq.) of the state of Oklahoma; and the entry of such request be made on the journal, which request was by the court overruled and exceptions allowed. Motion for new trial was duly filed and overruled, with exceptions, and defendants appeal to this court.

The defendants in their brief summarize their contentions as follows:

"(1) That the court erred in holding that the land was restricted at the time of the deed to the Washita Land Company in September, 1904.

"(2) That the court erred in holding the statute of limitations as in force in the Indian Territory did not remain in force and did not apply to this transaction, and the court further erred in refusing to find in its conclusions of fact as to the adverse possession of the plaintiffs in error for the statutory period.

"(3) That the court erred in refusing to allow plaintiffs in error to prove as an offset to the claim for rents the value of improvements made upon the lands and in refusing to allow plaintiffs in error to claim their rights under the Occupying Claimants' Act."

The first contention may be briefly and finally disposed of. This court in Gannon v. Johnston et al., 40 Okla. 695, 140 Pac. 430, Ann. Cas. 1915D, 522, held that the restrictions contained in section 16 of the Supplemental Agreement of the Choctaw and Chickasaw Nations (Act July 1, 1902, c. 1362, 32 St. at L. 643) upon the alienation of the surplus lands of a deceased allottee selected prior to the death of such allottee ran with the land, and prevented the heirs from alienating the same before the expiration of the periods prescribed in said section. Section 16 reads as follows:

"All lands allotted to the members of said tribes, except such land as is set aside to each for a homestead as herein provided, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year, one-fourth in acreage in three years, and the balance in five years; in each case from date of patent; provided, that such land shall not be alienable by the allottee or his heirs at any time before the expiration of the Choctaw and Chickasaw tribal governments for less than its appraised value."

Prior to the decision of this court construing said section, the United States District Court, in the case of 30,000 Land Suits, In re Lands of the Five Civilized Tribes, 199 Fed. 811, construed section 16 like this court. The Supreme Court of the United States, in Mullen v. United States, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, with reference to section 16 says:

"Thus, with respect to homestead lands, the supplemental agreement imposed no restriction upon alienation by the heirs of a deceased allottee. And the reason may be found in the fact that each member of the tribes—each minor child as well as each adult, duly enrolled as required—was to have his or her allotment; so that each member was already provided with a homestead as a part of the allotment, independently of the * * * descent. On the other hand, the proviso of paragraph 16—which relates to the additional portion of the allotment, or the so-called 'surplus' lands—contains a restriction upon alienation not only by the allottee, but by his heirs, whatever may have been the purpose, a distinction was thus made with regard to the disposition by heirs of the homestead and surplus lands respectively."

The case of Gannon v. Johnston, supra, was appealed to the Supreme Court of the United States, and on March 6, 1917, Mr. Justice Day speaking for the court affirmed the decision of this court and in the opinion (243 U. S. 108, 37 Sup. Ct. 330, 61 L. Ed. 622) used the following language:

"We think this principle is controlling here, and that it was the intention of Congress to make a restriction which should bind the surplus lands, whether in the hands of the original allottee in his lifetime or of his heirs after the decease of the original allottee during the periods named. The restriction was upon alienation of the lands as such, and was not merely personal to the allottee any more than it was in the Bowling Case."

See Bowling v. United States, 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080.

Under the authorities cited, the deed made by the plaintiffs is absolutely void and does not constitute even color of title.

In considering the second contention of defendants, it is not necessary to determine in this case whether or not the statute of limitation of Arkansas or of Oklahoma with reference to suits for the recovery of lands applies, as we are forced to the conclusion

that no statute of limitation runs against the plaintiffs under the facts in this case. By the terms of the original treaty made September 27, 1830, between the United States and the Choctaw Nation (7 Stat. 333). it was agreed that the United States should cause to be conveyed to the Choctaw Indians a tract of country west of the Mississippi river in fee simple to them and their descendants to inure to them while they shall exist as a nation and live upon it. It thus appears that the ultimate title to these lands was in the United States. That the United States can authorize by agreement with such Indians the alienation of such lands cannot be disputed; but, under the facts in this case, the attempted alienation of the lands involved was made before any authority existed for the same. In each of the treaties made with Indian tribes the United States has reserved the right of control over the lands granted, and it has been the universal holding of the courts that such lands can be alienated only in the manner prescribed by the laws of the United States and in accordance with treaty stipulations with the Indian tribes. It is well established that the guardianship of the United States over Indian land does not abate upon the making of an allotment and the allottee becoming a citizen of the United States. Tiger v. Western Inv. Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738; Bowling v. U. S., 233 U. S. 528, 34 Sup. Ct. 659, 58 L. Ed. 1080.

Section 15 of the Supplemental Agreement 1902, reads:

"Lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt, or obligation of any character, contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided."

It cannot be contended logically that the mere occupation and use of Indian lands which are nonalienable, there being no conveyance to the occupant or his grantors. would give the occupant the right to invoke the statute of limitation. Can it then be said that such occupation and use would be strengthened by a deed which the grantors, under the law, were unable to make and which was without any force or effect? Can the United States thus be deprived of its guardianship and interest in the lands? We do not think that alienation can be accomplished by indirection, when such cannot be done directly.

In Gibson v. Chouteau, 13 Wall. (80 U. S.) 92, 20 L. Ed. 534, the Supreme Court of the United States says:

"The occupation of lands derived from the United States, before the issue of their patent, for the period prescribed by the statutes of limitation of a state for the commencement of actions for the recovery of real property, is not a bar to an action of ejectment for the possession of such lands founded upon the legal title subsequently conveyed by the patent."

Quoting from the syllabus of McGannon v. Straightlege, 32 Kan. 524, 4 Pac. 1042:

"Under the treaty between the United States and the confederated Tribes of Kaskaskias, Peorias, Piankeshaws. and Weas, of May 30, 1845 (10 U. S. Stat. at Large, 1082), an Indian was allotted a certain piece of land, and before the patent was issued he executed a deed therefor to the defendant's grantor. Such deed has never been approved by the Secretary of the Interior. The defendant and his grantor have been in quiet and peaceable possession of the land ever since, and for more than 15 years prior to the commencement of this action. After the patent was issued to said Indian, and after his death, and on June 23, 1882, his sole surviving heir executed a deed of conveyance for the land to the plaintiff, and on October 10, 1882 such deed was approved by the Secretary of the Interior, and on April 25, 1883, the plaintiff commenced this action against the defendant to recover the land. Held, that neither this action nor the plaintiff's title to the land is barred by any statute of limitation."

The court in the body of the last-quoted opinion used the following language:

"The title being an Indian title—or, in other words, the title being vested in the United States and an Indian—no statute of limitations could operate against such title."

In Sheldon v. Donohoe. 40 Kan. 346, 19 Pac. 901, the syllabus reads:

"D., a white man who had been adopted as a member of an Indian tribe, made a deed purporting to convey to S., a white man who was not a member of any Indian tribe, a tract of land which under a treaty with the United States could not be alienated, leased, or otherwise disposed of, except to the United States or to some members of the same tribe. S. paid D. a part of the purchase price. and held possession of the land for about 16 years, when D. again came into possession. In an action of ejectment by S. against D. to recover the land, it is held that the deed was absolutely void; that S. could not acquire any right in the land in violation of the treaty, nor could he indirectly build up one by adverse possession, estoppel, or any statute of limitation; and that therefore his action must fail."

This court, in Miller v. Fryer, 35 Okla. 145, 128 Pac. 713; says:

"It is well settled that there can be no adverse possession against the federal government which can form the basis by estoppel or under the statutes of limitation; and it has been held that the same rule applies where the lands involved are lands that have been allotted to Indians with restrictions upon the alienation of title thereto by the Indians, so long as such restrictions upon alienation exist."

The next and last question is whether or not the court erred in refusing to allow defendant Wrigley the benefit of the Occupying Claimants' Act, and in refusing to him to offset the claim for rents to the extent of the value of improvements. We are of the opinion, as before stated, that the defendant Wrigley occupied no other status than that of a mere trespasser upon Indian lands being lands in which the United States and the Indians in question were interested. We do not think that, as to lands that are inalienable by Indians, any one can acquire the status of an occupying claimant. Under section 4935, Rev. Laws 1910, it is the duty of the court, before making an award to one claiming under the Occupying Claimants' Act, to find specifically whether "such improvements were made in good faith, and under color of title." The decisions are uniform that a deed to land made by an Indian before the removal of restrictions does not constitute color of title. Hence the defendant cannot be said to have any rights as an occupying claimant.

In further support of this conclusion, we suggest that it is provided in section 4937, R. L. 1910, that, if the appraisers or jury find the value of the improvements greater than the value of the rents, damages, and waste, the court should enter judgment that the successful claimant pay to the clerk of the court for the use of the occupying claimant the full amount of the excess of the value of the improvements over the value of the rents, damages, and waste before the writ of ouster shall issue. Section 15 above quoted, of the supplemental agreement provides that the allotted lands shall not be affected or incumbered by any deed, or obligation of any character, contracted prior to time when said lands may be alienated. It follows that, if the defendant in this case should have the benefit of the Occupying Claimants' Act, the land would be incumbered in violation of the laws of the United States to the extent awarded to by the appraiser, jury, or court, and the court would be without power to grant such relief to the claimant. There is no contract, express or implied, to pay for the value of the improvements, and the same cannot be offset against a claim for rents. By permitting such offset the defendant would be recognized as occupying a status with reference to Indian lands which is not warranted by statute or decisions of the courts.

In Maynes v. Veale, 20 Kan. 374, it is said in the syllabus:

"An Indian owner of land, held under treaty stipulations, which provides that the land shall be exempted from levy, taxation, or sale, and shall be alienable in fee, or leased, or otherwise disposed of only to the United States, or to persons then being members of the Pottawatomie Tribe and of Indian blood, with the permission of the President, and under such regulations as the Secretary of the Interior shall direct, cannot be compelled to pay for improvements on the premises under the Occupying Claimants' Act."

Having disposed of all the contentions urged by the defendants, and finding no prejudicial error, the judgment of the trial court is affirmed.

By the Court: It is so ordered.