**CRAVENS et al. v. AMOS et al.**

No. 5843—Opinion Filed June 12, 1917.

(166 Pac. 140.)

(Syllabus by the Court.)

**Indians—Indian Lands—Occupying Claimants—Rights of.**

The provisions of the Occupying Claimants article of Code of Civil Procedure, c. 60, art. 15 (Rev. Laws 1910, secs. 4933-4939), for securing compensation for valuable and permanent improvements made and taxes paid by an occupying claimant, upon lands allotted to a deceased allottee of the Five Civilized Tribes, cannot be enforced against the owners who are full-blood Indian heirs of the allottee, and who, under federal laws, cannot convey their interest therein without the approval of the court having jurisdiction of the settlement of the estate of the deceased allottee.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Ejectment by Hickman Amos, a minor, by his legal guardians, Allen W. James, and others, against John J. Cravens and others. There was a judgment for plaintiffs, and defendants bring error. Affirmed.

Kyle & Newman, for plaintiffs in error.

McPherren & Cochran, for defendants in error.

MILEY, J. This was an action of ejectment brought by defendants in error, who were plaintiffs in the court below, against the plaintiffs in error, defendants in the court below, to recover the possession of certain lands situate in Bryan county, resulting in final judgment in favor of the plaintiffs.

The defendants below thereupon attempted to invoke the benefit of the Occupying Claimants article of Code of Civil Procedure, c. 60, art. 15, Rev. Laws 1910, for the full value of lasting and valuable improvements made on the lands by them as occupying claimants and for all taxes paid thereon by them.

At the trial, on the day set, the court below held that the defendants were not entitled to the benefit of that article, and rendered final judgment dismissing their claim. To review this action of the court this proceeding in error is prosecuted.

It appears that the land was a part of that allotted to or in the right of Mary Hotubbi, a duly enrolled full-blood Choctaw Indian. She died, but whether before or after the lands were selected and designated as an allotment is not made to definitely appear by the record before us. The plaintiffs in error purchased the lands from certain persons claiming to be, and who they believed in good faith were, the heirs at law of the said Mary Hotubbi, and who conveyed the same to them by warranty deed. They entered into possession under this deed, and thereafter made the improvements and paid the taxes for which they seek compensation. The defendants in error are all full-blood Choctaw Indians, duly enrolled as such. They were adjudged the true and lawful heirs of the allottee, and as such the owners of the land, and at all times subsequent to the death of Mary Hotubbi entitled to the immediate possession thereof.

One of the grounds upon which the court below denied to the plaintiffs in error compensation for the improvements made and taxes paid was that the Occupying Claimants article could not be enforced against the successful plaintiffs in ejectment in this case, they being full-blood Indian heirs of the allottee. We think the ruling of the trial court was correct.

It is immaterial whether the land was selected and designated as the allotment before or after the death of Mary Hotubbi, or whether, if allotted before her death, the same was designated as the homestead, since in either case under the decisions of this court in Brader v. James, 49 Okla. 734, 154 Pac. 560, and Moffett v. Conley, 63 Okla. 3, 163 Pac. 118, subsequent to the passage of the act of April 26, 1906 (34 Stat. L. 137, c. 1876), conveyances by the full-blood Indian heirs of their interests in the land were subject to the approval of the Secretary of the Interior, and subsequent to the passage of the act of May 27, 1908 (35 Stat. L. 312, c. 199), subject to the approval of the court having jurisdiction of the settlement of the estate of the deceased allottee.

In Marcy v. Board of County Commissioners of Seminole County, 45 Okla. 1, 144 Pac. 611, this court further held that, where the conveyance of the interest of any full-blood Indian heir in land allotted to an allottee of the Five Civilized Tribes is not valid unless approved by the court having jurisdiction of the settlement of the estate of the deceased allottee, such land is restricted within the meaning of section 4 of the act of May 27, 1908, providing that land upon which restrictions have been removed shall be subject to taxation and all other civil burdens as though it were the property of other persons not allottees of the Five Civilized Tribes. It follows that such land is also restricted within the meaning and intent of section 5 of that act, which provides:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, * * * shall be absolutely null and void."

We think the enforcement of the Occupying Claimants article is a method of incumbering real estate within the meaning of the section just quoted. Section 4935, Rev. Laws 1910, provides for assessing the actual value of improvements on the date of the assessment, the rental value of the premises from the date of the summons to the date of the appraisement, and the actual value of the land without improvements. Section 4937 provides that, if the value of the improvements so found exceeds the value of the rents, damages, and waste, then the court shall enter judgment that the successful claimant pay to the clerk of the court for the use of the occupying claimant the full amount of the excess of the value of the improvements over the value of the rents, damages, and waste before the writ of ouster shall issue. Section 4938 provides that the successful claimant may elect to receive the value of the land without improvements, to be paid by occupying claimant within such reasonable time as the court may allow, and further provides that, if he shall tender a general warranty deed of the land conveying

his title within the time allowed by the court for the payment of the money, and if the occupying claimant should refuse or neglect to pay said money within the time limited, then that he may have writ of possession.

Manifestly the plaintiffs below could not avail themselves of any benefit of section 4939, since a general warranty deed executed by them would not convey their title. The act of Congress provides that such conveyance is void unless approved by the proper court. Under section 4937 the claimant can be kept out of possession until the claim for improvements and taxes is paid. If the claimant should never be able to pay the amount, his right to possession and enjoyment of his title would be permanently denied. In considering the effect of very similar statutes, the Supreme Court of Kansas, in Maynes v. Veale, 20 Kan, 374, said:

"A continued hostile possession would virtually deny title to the plaintiff; and a temporary hostile possession would embarrass the exercise of the title."

In that case the benefit of the Occupying Claimants statute was denied as against an Indian owner of land held under treaty stipulations which provided that the land should be exempt from levy, taxation, or sale, and should be alienable in fee, or leased, or otherwise disposed of only to the United States, or to persons then being members of the Pottawatomie Tribe and of Indian blood, with the permission of the President, and under such regulations as the Secretary of the Interior should direct. We do not believe that any construction can be given the Occupying Claimants article which would give it any force or effect without in effect nullifying the restrictions imposed by Congress on the land. The acts of Congress on the subject are. of course, paramount, and conflicting state statutes must give way. Walker v. Brown, 43 Okla. 144, 141 Pac. 681.

The judgment is affirmed

All the Justices concur except HARDY, BRETT, and RAINEY, JJ., who concur in the conclusion, and KANE, J., absent.