**KELLY v. WATKINS et al.**

No. 13720—Opinion Filed Oct. 14, 1924.

Rehearing Denied Dec. 23, 1924.

1. **Indians—Lands—Removal of Restrictions by Secretary of the Interior—Cancellation of Sale for Nonpayment of Purchase Price.**

Where restrictions on the alienation of land are conditionally removed by the Secretary of the Interior. making it effective only upon the sale of the land and the ex-

ecution of the deed by the allottee, and the land is sold under the direction of the Secretary of the Interior, and H. buys at the sale and pays in ten per cent. of the purchase price required under the rules, and the allottee is then notified of the sale and a deed enclosed to her with instructions. to sign and return to the officer making the sale, if the sale is satisfactory to her, and she executes the deed and returns it to the Indian Agent, who notifies the purchaser that the deed has been executed and returned to him for delivery upon payment of the purchase money, and the purchaser does not pay the purchase price, but writes the Indian Agency asking to be relieved from his purchase on account of there being a prior deed on the land, and the Indian Agent declines to release him and insists on his paying the balance of the purchase price, but the purchaser makes one excuse after another for about two years, and the Indian Agency then reports the matter to the Secretary of the Interior and recommends that the sale be canceled, which is done by the Secretary of the Interior, held, that the Secretary of the Interior had the right to cancel said sale for a failure to pay for the land.

2.  **Same—Conditional Removal of Restrictions—Effect on Title—Conveyance by Heirs.**

Where the restrictions on the sale of lands of a full-blood allottee have been ordered removed by the Secretary of the Interior upon certain conditions, which conditions are never complied with, and the Secretary cancels the sale of said land and conditional order removing the restrictions, such land still remains restricted and not subject to sale by the allottee, and upon the death of the allottee his or her heirs may sell the land with the approval of the county court of the county having jurisdiction of the estate of the deceased, and such deed conveys the land to the purchaser free of all restrictions.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court. Jefferson County; Cham Jones, Judge.

Action by F. E. Watkins and Paul S. Cotner against E. J. Kelly for possession and to quiet title to certain real estate described in the petition. There was judgment for the plaintiff, and defendants bring error. Affirmed.

Ledbetter & Ledbetter and Bridges, Vertrees & Anderson, for plaintiff in error.

W. Y. Dilley and Moore & West, for defendants in error.

Opinion by MAXEY, C. This case involves the surplus allotment of Agnes Stephen, a member of the Choctaw tribe, said land being described as 19.26 acres of lot 4, section 6, township 5, range 7 east, and lot 5 and the east 20 acres of lot 6, and the southeast quarter of the northeast quarter of section 1, township 5, south, range 8 west. Agnes Stephen, the allottee, married a man by the name of Webster. In the early part of the year 1912, Agnes Webster, nee Stephen, applied to the Secretary of the Interior for an order removing her restrictions on the alienation of the above described land, and on July 31, 1913, an order was issued by the Secretary of the Interior to Agnes Webster, nee Stephen, removing the restrictions on alienation of said land. Said order recites:

"Now, therefore, I, under the authority vested in me by the Act of Congress approved May 27, 1908, and the regulations prescribed thereunder, hereby remove the restrictions from said above described land, such removal of restrictions to become effective only and simultaneously with the execution of deed by said allottee to the purchaser after the said land has been sold in compliance with the direction of the Secretary of the Interior."

Said land was advertised and on the 1st day of November, 1913, it was sold to Milton W. Hampton for $2,970. Notice was given to Agnes Webster, nee Stephen, of the sale of said land and the amount it brought, and she was asked for her approval and a deed was enclosed to her for execution in case the sale was satisfactory to her. She signified her acceptance of the terms of the sale and executed the deed and returned it to the Commissioner to the Five Civilized Tribes to be delivered by him to the purchaser. In due course, Hampton, the purchaser, was notified that the sale was satisfactory and the deed had been executed and would be delivered to him upon the payment of the balance of the purchase money, Hampton having paid $297, being ten per cent. of the purchase price. At the time his bid was accepted on July 20, 1914, Hampton wrote to the United States Indian Superintendent calling attention to the fact that he bought the above described tracts of land on the 28th day of October, 1913, and paid ten per cent. cash on the purchase, but had not been able to get the money on account of prior deed to E. J. Kelly, and offering to surrender his claim if the agent would permit him to take the 19.26 acre tract for the amount he had paid on the purchase price. This particular tract was bid in for $288, and Hampton agreed to let the $297 that he had paid apply in payment on this small tract of land, and asked to be released from

the sale, but the Superintendent refused to release him and insisted on a payment of the sale of $2,673 within ten days. There was considerable correspondence between the parties, but Hampton did not pay the balance of the money and insisted that he could not pay it on account of the deed held by E. J. Kelly clouding the title, so that he could not borrow the money. Sometime in the latter part of the fall of 1914, it is alleged that Hampton made a deal with E. J. Kelly and assigned to him all of his right, title, and interest under his purchase of said land, and Hampton and Kelly went to Muskogee to see the Commissioner to the Five Civilized Tribes and tendered him the balance of the purchase money, but they were notified that the Secretary had canceled said sale, and would not accept the balance of the bid and deliver the deed. In January, 1919, Agnes Webster, nee Stephen, died and left surviving her Siwon Ward as her sole heir at law. Siwon Ward was the daughter of Wicey Ishtonubbi, who was a sister of Agnes Webster. In other words Siwon Ward was a niece of Agnes Webster, the allottee. On the 29th day of March, 1920, the county court of McCurtain county entered a decree determining the heirs of Agnes Webster, and found that Siwon Ward was the nearest of kin to the said Agnes Webster and is the sole heir to the estate of said Agnes Webster, nee Stephen. On the 16th day of September, 1919, Siwon Ward executed a deed to the land herein involved to J. Randall Cornell and said deed was duly approved by the county judge of McCurtain county, Okla., and Cornell conveyed said land by warranty deed to plaintiff, Paul S. Cotner, and Paul S. Cotner conveyed by warranty deed to F. E. Watkins, the other plaintiff, an undivided one-half interest in said land. It is the contention of the plaintiffs below, Watkins and Cotner, that the deed obtained through the county court of McCurtain county, after the Secretary of the Interior had canceled the sale to Hampton, is a valid deed, and that they are the owners of the land in controversy. On the other hand, the plaintiff in error, E. J. Kelly, who was defendant below and who claims through the sale to Hampton by the Commissioner to the Five Civilized Tribes, claims that Hampton did all that was required of him to entitle him to a deed to the land, and that the arbitrary refusal of the Commissioner to the Five Civilized Tribes to accept the balance due on the purchase price and deliver the deed was without authority of law, and that Kelly having become the owner of Hampton's interest in the transaction is entitled now to have the title to said land

decreed to be in him and his title quieted to same. The facts above recited are all the material facts in the case necessary for a decision of the points involved in this controversy.

There is no controversy about the fact that Hampton bought the land through the Indian Agency and paid ten per cent. of the amount bid for same, and that the sale was afterwards approved by the Secretary of the Interior and accepted by Agnes Webster, the allottee, but that Hampton never paid the balance of the purchase price and the matter, after dragging along two or three years, was reported to the Secretary of the Interior, with a recommendation that he cancel the sale and the order removing restrictions. This was done, and thereafter Agnes Webster, the allottee, died leaving Siwon Ward as her sole heir at law, and Siwon Ward sold the land to J. Randall Cornell, and he sold to Cotner. and Cotner sold a one-half interest to Watkins, so that the defendants in error all claim under the deed approved by the county court of McCurtain county, executed by Siwon Ward to J. Randall Cornell.

The plaintiff in error's claim is based on the Hampton purchase from the Commissioner to the Five Civilized Tribes. The deed was afterwards canceled, and the order removing the restrictions canceled, and up to the time of the death of Agnes Webster, the allottee, in January, 1919, the sale made by the Commissioner to the Five Civilized Tribes seems to have been considered a closed incident and nothing was done. Kelly, the plaintiff in error, testified that he was the tenant of Agnes Webster for some years prior to her death and paid her rent. every year for this land up to the time of her death, so that after he and Hampton had tendered the purchase money and it had been refused by the Commissioner, Kelley continued to live on the land and pay rent on it up to the time of the death of Agnes Webster.

Counsel for plaintiff in error have filed a very able brief and have cited a great many authorities. They divided their argument under three heads. The first is that the trial court erred in holding that plaintiffs below are not the legal and equitable owners of the land in controversy, and in discussing this assignment they first contend that the evidence fails to show that Siwon Ward was the sole and only heir of Agnes Webster. Under this head they call attention to the testimony of several witnesses and claim that the three children of Sarah Pisnachubbi were entitled to one-half and

Siwon Ward to the other half, but the testimony shows that the three children of Sarah Pisnachubbi were great nieces and nephews, and that Siwon Ward was a niece, and under our view of the law, was a sole heir. The question involved in this case as to who was the legal heir of Agnes Webster has been before this court before, and in our judgment it has settled this question beyond cavil. Lowrey v. LeFlore, 48 Okla. 235, 149 Pac. 1112. The following citation from this case will show that the facts as to the heirs are identical with the case at bar. The court said:

"From the foregoing agreed statement of facts we find that Mary LeFlore, a full-blood Choctaw Indian, died intestate in 1911. At the time of her death, she was the owner of certain real estate in LeFlore county, Okla., and had no father, no mother, no husband, no sister, no brother living, and no issue. She had one brother, Wallace LeFlore, who died in 1864. Wallace LeFlore had two children: First, Mack H. LeFlore, this defendant, now living; second, Lizzie Holson, a daughter, who died in 1910. Kizzie Woods is a daughter of Lizzie Holson, and a granddaughter of Wallace LeFlore, who was the brother of Mary LeFlore. The plaintiff herein is the grantee of Kizzie Woods, and therefore the owner of any interest that said Kizzie Woods might have had in the real estate owned by Mary LeFlore at the time of her death. In other words, the plaintiff herein, S. Lee Lowrey, is the grantee of Kizzie Woods, who is the daughter of Lizzie Holson, deceased, who was the daughter of Wallace LeFlore, deceased, was the brother of Mary LeFlore, deceased, who was the owner of the land in controversy at the time of her death.

"From the foregoing facts we have squarely presented the question whether the defendant Mac H. LeFlore, the nephew and nearest of kin of Mary LeFlore, became the sole and only heir and owner of her estate, or did Kizzie Woods, the child of Mack's deceased sister, inherit through her mother, Lizzie Holson? The trial court concluded, as a matter of law, and we think correctly, that Mack H. LeFlore was the only heir and that Kizzie Woods not being a child of a brother or sister of the intestate (a niece), but a grandniece, she was not an heir, and did not inherit. The law of succession and distribution involved herein is found in subdivisions, 3, 4, and 6 of sec. 8418, Rev. Laws Okla. 1910. * * *

"The third subdivision covers this case, and provides:

" 'If there be no issue, husband, wife, father nor mother, then * * * to the children of any deceased brother or sister.' "

The same question was again before this court in the case of Burns v. Tiffee, 49 Okla.

262, 152 Pac. 368. The facts in this case with reference to the heirs are identical with the LeFlore Case and with the case at bar, and Judge Hardy, who wrote the opinion in the case last cited, says: "This case is governed by the decision in Lowery v. LeFlore, 48 Okla. 235." So it has been settled that the rule laid down in Lowery v. LeFlore has become the law in this jurisdiction, and it is unnecessary to cite further authorities on that subject. The next proposition argued in the brief is that plaintiffs below, defendants in error herein, must recover upon the strength of their own title and not the weakness of the title of plaintiff in error, defendant below. This is a correct proposition of law, but it is not applicable to the case at bar. It seems to us that plaintiffs have a perfect title based on the deed executed by Siwon Ward as the sole heir of the deceased allottee, which deed was approved by the county court having jurisdiction of the administration of the estate of Agnes Webster, deceased, and that this deed fixed a valid title in the grantee. Hope v. Foley, 57 Okla. 513, 157 Pac. 727; Cochran v. Blanck, 53 Okla. 317, 156 Pac. 324; Tiger v. Jewell, 90 Okla. 34, 215 Pac. 1062.

The other question to be considered is whether or not the plaintiff in error, E. J. Kelly, has any valid claims to the land in controversy. He has set up one contention only, the same being embodied in the third paragraph relating to the attempted removal of the restrictions during the life time of the allottee. He states the proposition thus:

"Plaintiff in error, Kelly, and his grantor, Hampton, having done all in their power that could be done to acquire the deed so executed, acknowledged and delivered by the patentee, a court of equity will treat the transaction as a closed one, and although this plaintiff in error has only the equitable title, legal title can and will be decreed in him."

Under this head, counsel for plaintiff in error has cited a great many authorities from the courts pertaining to law governing the Commissioner of the Land Office in disposing of the public domain, and these authorities would be quite persuasive if Hampton had used any diligence in following up his purchase and completing it by the payment of the balance of the purchase price. The Secretary of the Interior had a duty to perform under the Act of Congress of May 27, 1908, and under authority of that act promulgated certain rules to govern in the removal of restrictions and the sale of restricted lands. These rules were promul-

gated and were known to Hampton when he bought this land. He is held to have known that if he failed to pay the balance of the purchase price when notified that the sale had been approved, and the deed executed and would be delivered to him if the balance of the purchase money was paid within ten days, the sale would be canceled. He did not pay it within ten days and the Commissioner to the Five Civilized Tribes, who conducted the sale, showed a great deal of patience and leniency with him, but after waiting over two years for him to comply with the terms of his purchase, the papers were returned to the Secretary of the Interior, with a recommendation that they be canceled, which was done.

There are a number of authorities cited by plaintiff in error to the effect that when the Commissioner of the Land Office sold public land and the purchasers complied with the terms of the purchase, that the Commissioner had nothing to do but deliver the deed, and that the Secretary had no further control over it and could not cancel the selection. That rule is well established, so far as the Land Department is concerned, and if this case was governed by the rules of the Land Department, it would stand on a different footing. But these are not public lands, they are restricted Indian lands and can only be sold on such terms as the Secretary of the Interior prescribes, and there is no question in our mind of the right of the Secretary to cancel a sale when the purchaser does not comply with it; and in this case we think that the Secretary of the Interior gave the purchaser, Hampton, all of the time and all of the help that he was justified in giving him, and that the Secretary was right in canceling the sale. What else was there to do? Hampton did not pay for the land he had bought, notwithstanding the Secretary had waited on him for two years or more. The presumption is that Agnes Webster needed the money, but Hampton did not pay and it was not only his right, but the duty of the Secretary, to cancel the order approving the sale and restore the land to Agnes Webster, the allottee, so that she could make a further effort to sell. Any other course would have been inexcusable.

Agnes Webster, the allottee, having died in the meantime, and Siwon Ward, her sole heir, having executed the deed under which the defendants in error claim, which deed was legally approved by the county court having jurisdiction of the estate of Agnes Webster, the defendants in error have good title to the land in controversy, and the trial court was right in holding their deed

valid. The case should, therefore, be in all things affirmed.

By the Court: It is so ordered.