## ALDRICH v. HINDS et al.

No. 15152—Opinion Filed Feb. 24, 1925.

Rehearing Denied May 5, 1925.

Withdrawn, Corrected, and Refiled April 27, 1926.

**1. Indians—Allotment After Death—Alienation by Full-Blood Heirs—Approval of Conveyance.**

Where lands were selected in 1904 by the administrator of a deceased Chickasaw Indian, and the same were thereafter allotted for the benefit of the heirs, who were full bloods, their conveyance thereof by warranty deed in 1907 was invalid without the approval of the Secretary of the Interior.

**2. Same—Restrictions—Power of Congress to Impose.**

Although such lands prior to April 26, 1906, were alienable without restrictions and without approval, Congress had power to impose restrictions on the right of alienation of such lands, by virtue of the continuing guardianship of Indians by the federal government, and by reason of the plenary power of Congress to legislate for their protection.

**3. Same—Tenancy in Common by Heirs — Adverse Possession.**

Heirs of a deceased Indian, whose allotment was selected by his administrator, took title thereto as tenants in common, and, where possession was taken by some of them through a fiscal agent, such possession was not adverse to any other heir not represented by such agent, nor would such possession set in motion the statute of limitation as against any heir not represented by such agent, since the possession of one tenant in common is the possession of all.

**4. Marriage — Indian Tribal Marriages — Validity — Statutes.**

Prior to the extention of the Arkansas law over the Indian Territory, the common law had no application to marriages between members of any of the Five Civilized Tribes, but all such marriages were regulated by tribal laws and customs, and all such marriages and the legitimacy of all children born of such marriages were recognized by Congress by Act May 2, 1890.

**5. Same—Presumption and Proof.**

Therefore, when the validity of any such marriage prior to 1890 is relied on to establish a right of inheritance, it is incumbent on the person relying thereon to plead and prove the laws and customs of the tribe relating to marriage and the existence of a marriage in fact. The strong presumption which the law indulges in favor of marriage must be supported by some proof of an actual marriage, either regular or irregular, law-

ful or customary, as distinguished from the common-law relation.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Grady County; Will Linn, Judge.

Action by Susan N. Aldrich against E. S. Hinds and another, to recover possession of certain real estate. Decree for defendants, and plaintiff appeals. Affirmed.

[Opinion as published in 110 Okla. 53, 235 Pac. 1100, withdrawn for correction, refiled, and republished by order of the court, deleting an inadvertent error in original opinion which affected title to land.]

It appears from the record in this case that Ellis McGee, a duly enrolled citizen of the Chickasaw Tribe of Indians, died August 6, 1903, leaving surviving his widow, Susan McGee, and four children, Sol, Isom, Esau, and Mary. After the death of Ellis McGee, and on December 9, 1904, the administrator of his estate made his selection of the allotable land of the tribe and patents therefor, issued in the name of Ellis McGee for the benefit of his heirs. In January, 1905, Susan McGee, the widow, and her children above named went into the actual possession and occupancy of the lands, through the Southern Trust Company, as fiscal agent, claiming title thereto as sole heirs of Ellis McGee, and so remained in the possession and occupancy thereof until the same was conveyed in 1908, except that on May 16, 1907, Susan McGee and Sol McGee, who was an adult, executed a warranty deed to their several interests in said land to said Southern Trust Company; said deed not being approved.

This action was commenced by Susan N. Aldrich December 15, 1920, to recover possession of an undivided one-fourth interest in the lands allotted in the name of Ellis McGee, claiming to be a child of Ellis McGee by his first marriage. Esau McGee died intestate and without issue June 6, 1906, so that his interest in the allotment descended to his brothers and sisters, and in this way plaintiff claims to be entitled to an undivided one-fourth interest in the land.

Defendants answered by general denial, expressly denied that plaintiff is a daughter of Ellis McGee or entitled to any interest in his estate as an heir, set up the title of the defendants derived through mesne conveyances from Susan McGee and her children, and pleaded specially that plaintiff was barred from maintaining this action by the statutes of limitation of the state of Arkansas, in force in the Indian Territory at the time of the selection of this allotment. Plaintiff replied to this answer, and upon the issues thus joined the case was submitted to the court June 23, 1923, resulting in a general finding in favor of the defendants and against the plaintiff and a decree in conformity with such general finding. After unsuccessful motion for new trial, plaintiff has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendants, respectively, as they appeared in the trial court.

Cicero I. Murray, for plaintiff in error.

Bond, Melton & Melton, for defendants in error.

Opinion by LOGSDON, C. This is an equitable proceeding brought to establish plaintiff's right of inheritance to an undivided one-fourth interest in the lands allotted in the name of Ellis McGee after his death, for the benefit of his heirs, and for an accounting for the rents and profits.

Plaintiff presents her case in the brief under the single proposition that the only question to be decided in the case is whether or not the cause of action of the plaintiff in error was barred by the statute of limitations which was in force prior to statehood, being the 7-year limitation (of Arkansas).

On the other hand, in addition to taking issue on this legal proposition, defendants insist that the general finding of the trial court that plaintiff is not entitled to recovery includes a finding against her on the issue of legitimacy, and that such finding is not clearly against the weight of the evidence.

The legal proposition presented involves the effect and operation of section 22 of Act Cong. April 26, 1906 (34 Stat. 145), upon the right of alienation by full-blood heirs of inherited lands selected and allotted after the death of the allottee, descent of which was cast prior to the passage and approval of that act.

It has long been settled that prior to Act April 26, 1906, and by virtue of the provisions of section 22 of the Supplemental Treaty (Act of July 1, 1902 [32 Stat. 641]), there was no restriction upon such right of alienation. Mullen v. United States, 224 U. St. 448, 32 S. Ct. 494, 56 L. Ed. 834; Hancock v. Mutual Trust Co., 24 Okla. 391, 103 Pac. 566; Hoteyabi v. Vaughn, 32 Okla. 807, 124 Pac. 63.

But by Act April 26, 1906, in section 22 thereof, it was provided that all conveyances of inherited lands by full-blood heirs should be subject to the approval of the Secretary of the Interior. That this restriction on alienation of inherited lands by full-blood Indians embraced all heirs of that class, whether descent was cast prior or subsequent to the passage and approval of that act, is no longer an open question. In Brader v. James, 49 Okla. 734, 154 Pac. 560 (affirmed, 246 U. S. 88, 38 S. Ct. 285, 62 L. Ed. 591), this court definitely determined that such was the effect and operation of that restriction. In the body of that opinion Justice Sharp said:

"Nor is there anything in the language used, or in the history of the times, to indicate a purpose to confine the operation of the statute to sales and conveyances made by full-blood heirs to lands thereafter inherited, and to exclude lands inherited, but not conveyed, prior to its adoption. The one class needed protection as much as the other, and both are equally within the statute, fairly construed."

This court's conclusion as to the effect and operation of the restriction provision is announced in this language:

"Our conclusion, then, is that the proviso or latter clause of section 22 of the Act of April 26, 1906, means just what it says, and requires that all deeds made by full-blood Indian heirs of inherited allotted lands, since the passage of the act, in order to be valid, must be approved by the Secretary of the Interior. This, too, regardless of the fact that Cerena Wallace, the full-blood allottee, died before the passage of the Act of April 26, 1906, for it is the law in force at the date of conveyance, and not that of the time of the death of the ancestor, that controls."

This construction has been followed and approved by this court in Sampson v. Stapleton, 55 Okla. 547, 155 Pac. 213; McCosar v. Chapman, 59 Okla. 78, 157 Pac. 1059; Bruner v. Nordmeyer et al., 64 Okla. 163, 166 Pac. 126; Cravens et al. v. Amos et al., 64 Okla. 71, 166 Pac. 140; Moffett et al. v. Conley et al., 63 Okla. 3, 163 Pac. 118.

That Congress had power to reimpose restrictions on alienable inheritances by virtue of the government's guardianship over the Indians, and by reason of its plenary authority to legislate for their protection, has also been determined. Heckman v. United States, 224 U. S. 413, 32 S. Ct. 424, 56 L. Ed. 820; Monson v. Simonson, 231 U. S. 341, 34 S. Ct. 71, 58 L. Ed. 260. Neither can a conveyance, made in violation of that re-

striction, form the basis of a plea of estoppel or set in motion the statute of limitations in favor of one claiming thereunder. Wrigley et al. v. McCoy et al., 73 Okla. 161, 175 Pac. 259; Patterson et al v. Carter, 83 Okla. 70, 200 Pac. 855; Sandlin et al. v. Barker et al., 95 Okla. 113, 218 Pac. 519.

It follows that the purported conveyance from Susan McGee on May 16, 1907, to the Southern Trust Company, made without the approval of the Secretary of the Interior, conveyed no right, title, or interest to the grantee. The deed being absolutely void, it cannot now estop this plaintiff from asserting any rights which she may have in the allotted lands of Ellis McGee, deceased. Being in violation of restrictions resting at the time on Susan McGee, it was likewise ineffectual to start the statute of limitations to running in favor of the subsequent possession of the grantee, the Southern Trust Company. Rather its subsequent possession, as against this plaintiff, will be referred to its fiscal agency, through which it rightfully held the prior possession.

Plaintiff claims to be a legitimate heir of Ellis McGee by his first wife, Lucinda. If this claim is valid and is found to be correct, then she was a tenant in common with the other heirs, and their possession was her possession and not adverse. Arthur v. Coyne, 32 Okla. 527, 122 Pac. 688; Chouteau v. Chouteau, 49 Okla. 105, 152 Pac. 373; Longfellow v. Byrne, 68 Okla. 314, 174 Pac. 745; Howard v. Manning, 79 Okla. 165, 192 Pac. 358, 79 A. L. R. 819. Even if the law were not thus, their adverse possession during the restricted period could not militate against the rights of plaintiff, who, if an heir, was placed under restrictions by the act of 1906. In Miller v. Fryer, 35 Okla. (sp. cit.) 148, 128 Pac. 714, Justice Hayes, speaking for this court, said:

"It is well settled that there can be no adverse possession against the federal government which can form the basis of title by estoppel or under the statutes of limitation; and it has been held that the same rule applies where the lands involved are lands that have been allotted to Indians with restrictions upon the alienation of title thereto by the Indians, so long as such restrictions upon alienation exist."

To the same effect are Collins Inv. Co. v. Beard, 46 Okla. 310, 148 Pac. 846; Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329; Brewer v. Perryman, 62 Okla. 176, 162 Pac. 791; Tidal Oil Co. et al. v. Flanagan, 87 Okla. 231, 209 Pac. 729:

It is not contended by defendants that plaintiff is barred from maintaining this action by any statute of limitation of this state. The Arkansas statute alone is relied upon, and it is inapplicable by reason of the plenary power of Congress to legislate concerning the Indians and their property, and its exercise of that power by reimposing restrictions prior to the execution of the deed relied on by defendants. Prior to April 26, 1906, plaintiff, if an heir of Ellis McGee, was a tenant in common with his other heirs, and the nature of this tenancy precluded the idea of adverse possession. Before the deed of May 16, 1907, was executed, restrictions had been imposed by Congress on all full-blood heirs, and this thereafter protected plaintiff from ouster by the other tenants in common through an attempted conveyance by them of her interest without approval of the Secretary of the Interior.

Is the plaintiff, Susan H. Aldrich, a legitimate child and heir of Ellis McGee? Upon the trial of the case the court heard all of the testimony and saw all of the witnesses, and made a general finding in favor of the defendants and against the plaintiff. That finding reads:

"The court finds the facts in this cause in favor of the defendants E. S. Hindes and E. C. Hindes, and concludes that said defendants are entitled to the relief prayed for in their answer."

There was no issuable fact in the case other than the alleged fact that plaintiff is the legitimate child of Ellis McGee. This finding by the court was necessarily a finding against this claim of plaintiff, and embraced adverse findings on every incidental question of fact growing out of the main fact sought to be established. First Nat. Bank of Guymon v. Arnold, 28 Okla. 49, 113 Pac. 719; Oland v. Malson, 39 Okla. 456, 135 Pac. 1055; Schaier v. Midland Hotel Co., 41 Okla. 111, 137 Pac. 664; Tripp v. Deupree, 60 Okla. 47, 158 Pac. 913; Mutual Life Ins. Co. v. Boucher, 83 Okla. 42, 200 Pac. 534. Upon the general finding of fact the court concluded as a matter of law:

"That the plaintiff, Susan N. Aldrich, has no right, title, interest, or claim in or to said land, or any part thereof. * * *"

Susan N. Aldrich is a daughter of Lucinda Ned. She was enrolled as a full-blood in September, 1898, as being 28 years old, and testified that she was 53 at the time of the trial. Lucinda died when Susan was about a year old. After her mother's death Susan lived in the family of Arch McGee, who was Ellis McGee's grandfather. After the death of Arch McGee she lived in the family of Cornelius McGee, an uncle of Ellis, until she was placed in Bloomfield Academy. This occurred when she was about 6 years old. She was enrolled at Bloomfield Academy as Susan Ned, and by this name she was known until her marriage at Gainsville, Tex., in September, 1893. She learned of Ellis McGee's death in 1903, about 3 months thereafter. Ellis McGee killed a man when Susan was about 5 years old and left the Pennington neighborhood, where he had always lived. Before leaving he came to see Susan at Arch McGee's and told her never to forget him.

To support the issue of a marriage between Ellis McGee and Lucinda Ned, plaintiff introduced 3 witnesses. Ruthie Lewis testified that she was about 9 years old when plaintiff was born; that plaintiff is a child of Lucinda Ned and Ellis McGee; that Lucinda Ned lived at Isaac McGee's, who was the father of Ellis; that Ellis and Lucinda passed by where witness and some other children were playing, and Ellis told witness they were going away to be married; that they afterward returned to Isaac McGee's and lived there as husband and wife; that plaintiff was born about a year before her mother, Lucinda, died; that after her mother died plaintiff lived at the home of Cornelius McGee, an uncle of Ellis; that Ellis never lived with Hattie Wolf or Maria McLish during the lifetime of Lucinda; that when Cornelius McGee placed plaintiff in school he had her enrolled as Susan Ned.

On cross-examination this witness admitted that she had previously testified by deposition in this case, and that the following questions and answers in said deposition were correct:

"Q. Was Lucinda and Ellis separated before Susan was born? A. Yes; don't know how long. Q. Did Ellis live at hi sfather's with Hattie Wolf? A. Yes. Q. Where was Lucinda when he was living there with Hattie Wolf? A. She was there."

Mrs. Nannie Wallace, a half-sister of Lucinda Ned, testified that she knew nothing about the marriage of Lucinda Ned and Ellis McGee; that she was at Isaac McGee's one time when plaintiff was about 9 months old; that she went at the request of Lucinda Ned; that Lucinda said nothing to witness about who was her husband and the father of plaintiff; that she only stayed there one night.

Jane James, a sister of Lucinda Ned, testified through an interpreter that Ellis and

Lucinda were married; that she had visited at Isaac McGee's while Ellis and Lucinda lived there; that she never heard any of the McGee family speak of Ellis and Lucinda being married; that she knew neither Hattie Wolf nor Maria McLish. The testimony of this witness which is of any probative value goes to the paternity of Ellis McGee rather than to the marriage of Lucinda.

Rhoda Palmer, a cousin of Ellis McGee, testified that she had known plaintiff ever since birth; that Ellis McGee was plaintiff's father and Lucinda Ned was her mother; that she does not know anything of the marriage; that there were other women at Isaac McGee's whom witness did not know.

The alleged marriage of Ellis McGee and Lucinda Ned occurred prior to 1870 at a time when the common law had no application to marriages among members of the Five Civilized Tribes. Butler v. Wilson, 54 Okla. 229, 153 Pac. 823; Crickett v. Hardin. 60 Okla. 57, 159 Pac. 275. Plaintiff did not plead or offer to prove the laws or customs relating to marriage among the Chickasaws prior to Act Cong. May 2, 1890 (26 Stat. 98, § 38), which provides:

"That all marriages heretofore contracted under the laws or tribal customs of any Indian Nation now located in the Indian Territory are hereby declared valid, and the issue of such marriages shall be deemed legitimate and entitled to all inheritances of property or other rights, the same as in the case of the issue of other forms of lawful marriage."

As was said in Crickett v. Hardin, supra:

"The obvious purpose and effect of this provision was to validate all prior marriages of members of the Five Civilized Tribes, contracted in good faith, according to either the express law or the customs of the tribe, which for want of formality as to solemnization, registration, etc., might otherwise have been deemed invalid, and to legitimize and render the issue of such marriages capable of taking property and other rights by inheritance."

In the absence of pleading and proof of the laws and customs relating to marriage among the Chickasaws prior to 1890, it cannot be said, as against the finding of the trial court, that the conflicting evidence in the instant case is sufficient to establish a matrimonial cohabitation and intent. The facts that after the death of Lucinda the plaintiff was taken into the family of Cornelius McGee, while Ellis, her father, continued to reside in his old home with his sister and stepmother, and that when plaintiff was of school age she was enrolled by this uncle under the name of Ned, which name she continued to bear until her marriage in 1893, are very cogent circumstances, and, when considered in connection with her long delay in asserting her rights, evince a doubtful claim. While it is the law that every presumption will be indulged in favor of cohabitation being matrimonial rather than meretricious, it is necessary that a marriage in fact be shown, either regular or irregular in character, to support such presumption. Chancey v. Whinnery, 47 Okla. 272, 147 Pac 1036. Neither can it be said, in the absence of pleading and proof, that Ellis McGee's recognition of plaintiff as his child was sufficient under the Chickasaw law to amount to legitimation so as to constitute her his heir. Such recognition as is shown by the record in this case is insufficient under the law of this state. Comp. Stat. 1921, § 11303; Holloway v. McCormick et al., 41 Okla. 1, 136 Pac. 1111, 50 L. R. A. (N. S.) 536

Upon the entire record it cannot be said as a matter of law that the general finding of the trial court is against the clear weight of the evidence, and the decree based upon such general finding should be in all things affirmed.

By the Court: It is so ordered.

Note—See under (1) 31 C. J. p. 520; (2) 31 C. J. p. 513; (3) 38 Cyc. p. 23; (4) 26 Cyc. p. 831; (5) 26 Cyc. p. 872.