### KELLY v. WATKINS et al.

No. 19428. Opinion Filed Oct. 16, 1928.

Rehearing Denied Feb. 12, 1929.

Anderson & Anderson, for plaintiff in error.

W. Y. Dilley, for defendants in error.

LESTER, J. The parties to this appeal occupy a reverse position to that in the district court, and will be referred to as they appeared in that court.

The plaintiffs brought an action against the defendant for the possession of certain land and for damages on account of the unlawful exclusion of the same by the defendant. The plaintiffs prevailed in the district court, and the cause was then appealed to this court, and this court affirmed the judgment of the district court. See Kelly v. Watkins, 105 Okla. 116, 231 Pac. 873. Mandate was duly issued, and thereafter the defendant in the district court sought to invoke the aid of what is commonly known as the Occupying Claimants' Act, which is to be found in sections 472-478, C. O. S. 1921.

The district court, after a hearing, denied the defendant the benefit of said act, for the reason that all the pretended claims, rights, or title of defendant arose during the time that said land was fully restricted by the several acts of Congress, and the defendant has appealed from the action of the district court in denying him a hearing on his claim for improvements, and this cause is here again on the sole question as to whether the court committed error in denying defendant his claim for improvements.

The defendant cites the cases of Harper v. Stumpff, 84 Okla. 187, 203 Pac. 194, and Provens v. Ryan, 57 Okla. 175, 156 Pac. 351. An examination of these two cases shows that the question of procedure was there involved, and neither of the said cases involved the claims of an occupying claimant where such alleged claims arose under a contract with a restricted Indian.

This court in the case of Marcy v. Board of County Commissioners of Seminole Coun-

ty, 45 Okla. 1, 144 Pac. 611, held that, where the conveyance of the interest of any full-blood Indian heir in land allotted to an allottee of the Five Civilized Tribes is not valid unless approved by the court having jurisdiction on the settlement of the estate of the deceased allottee, such land is restricted within the meaning of section 4 of the Act of Congress May 27, 1908 providing that land upon which restrictions have been removed shall be subject to taxation and all other civil burdens as though it were the property of other persons not allottees of the Five Civilized Tribes.

In the case of Cravens v. Amos, 64 Okla. 71, 166 Pac. 140, this court, after reciting the provisions of section 4, Act of May, 1908, said:

"It follows that such land is also restricted within the meaning and intent of section 5 of that act, which provides: 'That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, * * * shall be absolutely null and void.'

"We think the enforcement of the Occupying Claimants Article is a method of incumbering real estate within the meaning of the section just quoted. Section 4935, Rev. Laws 1910, provides for assessing the actual value of improvements on the date of the assessment, the rental value of the premises from the date of the summons to the date of the appraisement, and the actual value of the land without improvements. Section 4937 provides that, if the value of the improvements so found exceeds the value of the rents, damages, and waste, then the court shall enter judgment that the successful claimant pay to the clerk of the court for the use of the occupying claimant the full amount of the excess of the value of the improvements over the value of the rents, damages, and waste before the writ of ouster shall issue. Section 4938 provides that the successful claimant may elect to receive the value of the land without improvements, to be paid by occupying claimant within such reasonable time as the court may allow, and further provides that, if he shall tender a general warranty deed of the land conveying his title within the time allowed by the court for the payment of the money, and if the occupying claimant should refuse or neglect to pay said money within the time limited, then that he may have writ of possession.

"Manifestly, the plaintiffs below could not avail themselves of any benefit of section 4939, since a general warranty deed executed by them would not convey their title. The act of Congress provides that such conveyance is void unless approved by the proper court. Under section 4937 the claimant can be kept out of possession until the claim for improvements and taxes is paid. If the claimant should never be able to pay the amount, his right to possession and enjoyment of his title would be permanently denied. In considering the effect of very similar statutes, the Supreme Court of Kansas in Maynes v. Veale, 20 Kan. 374, said:

"'A continued hostile possession would virtually deny title to the plaintiff; and a temporary hostile possession would embarrass the exercise of the title.'

"In that case the benefit of the Occupying Claimants Statute was denied as against an Indian owner of land held under treaty stipulations which provided that the land should be exempt from levy, taxation, or sale, and should be alienable in fee, or leased, or otherwise disposed of only to the United States, or to persons then being members of the Pottawatomie Tribe and of Indian blood, with the permission of the President, and under such regulations as the Secretary of the Interior should direct. We do not believe that any construction can be given the Occupying Claimants Article which would give it any force or effect without in effect nullifying the restrictions imposed by Congress on the land. The acts of Congress on the subject are, of course, paramount, and conflicting state statutes must give way. Walker v. Brown, 43 Okla. 144, 141 Pac. 681."

The case of Wrigley v. McCoy, 73 Okla. 161, 175 Pac. 259, was an action in ejectment, for cancellation of instruments and for rents and profits. The land was the allotment of a deceased full-blood Choctaw, the plaintiffs were the heirs of the allottee, the defendant was in possession under a deed previously executed by plaintiffs, but void under the provisions of the Choctaw-Chickasaw Supplemental Treaty. After judgment for plaintiffs, defendant made request for reimbursement for improvements and taxes under the Occupying Claimants' Act. In that opinion this court said:

"The next and last question is whether or not the court erred in refusing to allow defendant Wrigley the benefit of the Occupying Claimants' Act, and in refusing to him to offset the claim for rents to the extent of the value of the improvements. We are of the opinion, as before stated, that the defendant Wrigley occupied no other status than that of a mere trespasser upon Indian lands, being lands in which the United States and the Indians in question were interested.

We do not think that, as to lands that are inalienable by Indians, any one can acquire the status of an occupying claimant. Under 4935, R. L. 1910 (Comp. St. 1921, sec. 474), it is the duty of the court, before making an award to one claiming under the Occupying Claimants' Act, to find specifically whether 'such improvements were made in good faith, and under color of title.' The decisions are uniform that a deed to land made by an Indian before the removal of the restrictions does not constitute color of title. Hence the defendant cannot be said to have any rights as an occupying claimant.

"In further support of this conclusion, we suggest that it is provided in section 4937, R. I. 1910 (476, Comp. St. 1921) that, if the appraisers ·or jury find the value of the improvements greater than the value of the rents, damages, and waste, the court should enter judgment that the successful claimant pay to the clerk of the court for the use of the occupying claimant the full amount of the excess of the value of the improvements over the value of the rents, damages, and waste before the writ of ouster shall issue. Section 15, above quoted, of the Supplemental Agreement provides that the allotted lands shall not be affected or incumbered by any deed, debt, or obligation of any character, contracted prior to the time when said lands may be alienated. It follows that, if the defendant in this case should have the benefit of the Occupying Claimants' Act, the land would be incumbered in violation of the laws of the United States to the extent awarded by the appraisers, jury, or court, and the court would be without power to grant such relief to the claimant."

The pleadings and judgment in the principal cause show the following facts with reference to the alleged title of the defendant, Kelly:

(1) The land is controversy was the allotment of Agnes Webster, nee Stephen, a full-blood Choctaw Indian, roll No. 1439.

(2) Said allottee died in January, 1919, and left as sole heir one Siwon Ward, a full-blood Choctaw Indian, roll No. 1539.

(3) Said Siwon Ward conveyed the said land in September, 1919, to the grantor of plaintiffs, her deed being approved by the county court of McCurtain county, and this being the basis of plaintiffs' title.

(4) The claim of defendant, Kelley, was based upon two alleged conveyances executed by the allottee, Agnes Webster, nee Stephen, before her death, as follows: (a) A deed executed March 14, 1907, to the American Trust Company, conveying an undivided one-fourth interest in said land; (b) a deed and an attempted sale pursuant to

a conditional order removing restrictions, under supervision of the Superintendent for the Five Civilized Tribes, in 1913, but which was never completed, the removal of restrictions never going into effect and the order therefor being canceled.

In the instant case the plaintiffs were not restricted Indians; they secured the title from parties that acquired the land in the manner provided by the United States government. The contracts of the defendant with a restricted Indian on restricted land were wholly void. When the restricted Indian sold said land under the acts of Congress, he sold it disburdened of any illegal claim of an occupying claimant.

The defendant does not in any manner attempt to show how he may recover for improvements made under the facts in this case, nor does he cite any case which would tend to support any theory which would enable him to collect for improvements made under a void contract with a restricted Indian owner of the land.

Judgment is affirmed.

BRANSON, C. J., MASON, V. C. J., and HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See 31 C. J. p. 519, §91; p. 526, §101.